23 541
77 141

23 541
54 LRA 907n

## HARRINGTON, Executor, vs. BRITTAN and others.

CHATTEL MORTGAGE: *Effect of filing — Filed by mortgagor — Agreement between parties as to order of sale of mortgaged chattels — Effect of bequest of money by mortgagee to mortgagor.*

1. Filing a chattel mortgage in the proper office obviates the necessity for a change of possession.

2. A chattel mortgage is not invalid as against third persons because it was made and filed by the mortgagor in the absence of the mortgagee, if it was so made and filed in pursuance of the mortgagee's direction or request.

3. An agreement between debtor and creditor, before the execution of a mortgage, as to the *order* in which the chattels to be included in it shall be

sold to pay the debt, does not make the mortgage invalid as to third parties.

4. A bequest of money by mortgagee to mortgagor does not extinguish the mortgage debt *pro tanto*, unless there is something in the terms of the bequest to show such an intention.

APPEAL from the Circuit Court for *Rock* County.

Action to recover the possession of a piano, which had been taken in execution on a judgment in favor of *Brittan* against one Franklin Darrow. The plaintiff claimed the piano under a chattel mortgage executed by Darrow to his testatrix, Mrs. Matteson, and gave in evidence, against objection, his letters testamentary signed by the county judge of Walworth county, with the seal of the court affixed. The mortgage was given to secure a note for $250, dated October 15, 1858, due on demand, and bearing interest at twelve per cent, payable semi-annually. Darrow testified, that he had never paid any thing upon the note; that in June, 1860, he gave Mrs. Matteson (who was his sister-in-law) a mortgage on the piano, and that when that ran out, he filed a new one, and so on, until in March, 1864, Mrs. Matteson told him that the interest was running up so much that she wanted more security. He promised her that he would execute a new mortgage, and put into it his team as well as the piano, and would file it. On the 27th of May, 1864, he executed and filed the mortgage under which the plaintiff claims. He filed it because Mrs. Matteson had requested that he should do so. He lived in Beloit, and Mrs. Matteson lived in Walworth county. He did not see her from the time he filed the mortgage until after the piano was taken in execution. He had the team in his possession at the time of the trial (December, 1867). "The horses were not to be meddled with," the witness said, "until the piano failed to pay the debt." The will of Mrs. Matteson, which was executed in 1859, gave a legacy to Darrow in these words: "I also give and bequeath to Franklin Darrow, my brother-in-law, one

hundred dollars." The court, at defendant's request, instructed the jury: (1.) That to entitle the plaintiff to recover, he must show that the mortgage was made in good faith, and without intent to defraud creditors. (4 and 7.) That if Darrow made the mortgage in the absence and without the knowledge or consent of Mrs. Matteson, and it was not delivered before the levy, plaintiff could not recover. (8.) That the delivery to a third person would not authorize a recovery in this action, unless such person was the agent of Mrs. Matteson, authorized to receive it and place it on file. The defendant asked the court to instruct the jury, " (5.) That the placing of the mortgage in the office of the city clerk by Darrow, without the knowledge of Mrs. Matteson, was not such a delivery as will entitle the plaintiff to recover." The court modified the instruction by adding after the word " knowledge," the words " or direction." The court also refused various instructions asked by the defendant, the nature of which will sufficiently appear from the opinion.

Verdict for the plaintiff; new trial denied; and defendant appealed from a judgment on the verdict.

*Todd & Converse*, for appellant:

1. There was no legal proof that the plaintiff was executor. The letters do not prove themselves. There should have been attached to them a certificate in conformity to section 38, chapter 97, R. S. 2. The evidence shows a series of fraudulent acts. From 1858, no part, principal or interest, of the debt was paid; none of the mortgages were foreclosed; but from year to year Darrow and his sister-in-law defy honest creditors by a methodical covering up of his property, which he was all the time allowed to retain in his possession. The plaintiff failed to establish the fact that the transaction was in good faith. 3. Mrs. Matteson did not know of the execution of the mortgage until after the property was taken in execution, and never ratified the act of Darrow in filing it.

*Welch v. Sackett,* 12 Wis. 243; 8 id. 236.   4. The agreement that the team should not be meddled with, made the mortgage fraudulent as to creditors.   13 Wis. 629; 2 Wend. 596; 17 id. 492; 19 N. Y. 123; 16 Ohio, 547; 5 Ohio St. 1; 3 Blackf. 309; 18 Ill. 396.

*Williams & Sale,* for respondent.

COLE, J.   We see nothing in this record which would warrant a reversal of the judgment.   A number of exceptions were taken on the part of the defendant to the rulings of the court on the trial, but we deem them all untenable.   The court gave several instructions asked by the defendant in the precise language in which they were drawn.   The fifth instruction was slightly modified by the court, but the correction was so obviously proper that it needs not a word of comment.   The second and third instructions asked and refused are based upon the proposition, that, if the agreement was that the mortgaged property was to remain in the possession of the mortgagor, such an arrangement would render the instrument void as to creditors.   But this is a mistake.   All the chattel mortgages were placed upon file in the proper office from time to time as they were executed.   This obviated the necessity for a change of possession.   Sec. 9, chap. 107, R. S.   In effect the same error was embodied in the sixth instruction asked and refused — that if Darrow was entitled to the possession of the piano-forte at the time it was seized on the execution against him, then the plaintiff could not recover.

The ninth instruction was clearly erroneous.   That was, in substance, that if Darrow acted as the agent or servant of Mrs. Matteson by receiving the chattel mortgage and carrying the same to the clerk's office, this would constitute no delivery of the mortgage to the plaintiff, or to any one else for her benefit. The mortgagor might undoubtedly act as the agent of the mortgagee in placing the mortgage on file. *Sargeant v. Solberg,*

22 Wis. 132. The instruction assumes that Mrs. Matteson could not constitute him her agent for that purpose. The court had previously instructed the jury, that if Darrow executed the mortgage and placed it on file without the knowledge or direction of Mrs. Matteson, this would not constitute a delivery, and that the instrument would not be valid as to a creditor of Darrow who attached the mortgaged property before Mrs. Matteson had accepted and ratified the acts of Darrow. But it was certainly competent for Mrs. Matteson to make Darrow her agent to file the mortgage.

By the tenth instruction the court was asked to direct the jury, that, if there was an arrangement between Darrow and Mrs. Matteson that the horses were not to be meddled with until the piano failed to pay the debt, such arrangement would render the mortgage void. In other words, that any arrangement between the mortgagor and mortgagee of personal property, as to the order of sale, and as to what property shall first be sold to satisfy the debt, renders the instrument invalid as to creditors. But what principle of law or morals forbids such an arrangement? In what manner can creditors be injured or prejudiced by it? It is merely saying what property shall be first sold upon the mortgage. That is all such an arrangement amounts to.

The last instruction asked and refused was, if the jury found that there was a bequest, made by Mrs. Matteson to Darrow of $100, such a bequest would operate as an extinguishment *pro tanto* of the debt from Darrow to her estate. "A gift of a legacy may certainly be so framed as to be a release of a demand, but it must be clear." *Wilmot v. Woodhouse*, 4 Barb. Ch. 230. There is, however, nothing in the bequest made by Mrs. Matteson to Darrow, which shows an intention on her part to surrender or release any portion of this mortgage debt. The note given to her by Darrow is found among the testator's property, uncanceled in whole or in part, and there is a total

absence of evidence indicating an intention on the part of Mrs. Matteson to release the debt.   2 Williams on Ex'rs, 1119.

We think these remarks dispose of the material questions arising upon the record.

*By the Court.* — The judgment of the circuit court is affirmed.