## N. FRANKHOUSER v. A. W. ELLETT.

1. CHATTEL MORTGAGE; *Retention of Possession of Mortgaged Property by Mortgagor; Fraud.* Under the statutes of this state, a chattel mortgage may contain a valid stipulation for the retention of possession by the mortgagor of the mortgaged property; and possession so retained in conformity with the terms of the mortgage is not, when the mortgage is duly filed, either *per se* fraudulent or *prima facie* evidence of fraud, as against creditors or subsequent purchasers.

2. ———— *Such Possession, When not Fraudulent.* Where a mortgage is given on a stock of goods, with a stipulation for possession thereof by the mortgagor, and by agreement outside the mortgage the mortgagor is permitted to continue disposing of the goods in the ordinary course of business, and to use a portion of the proceeds thereof in the support of his family, paying the remainder over in discharge of the mortgage debt, the whole transaction is not thereby as matter of law rendered fraudulent and void as against creditors and subsequent purchasers, but will be upheld or condemned according as the arrangement is entered into and carried out in good faith or not.

*Error from Osage District Court.*

REPLEVIN, brought by *Ellett* against *Frankhouser*, sheriff of Osage county, to recover certain goods and chattels taken by said sheriff by virtue of a writ of attachment issued by B. N. Wyatt, a justice of the peace of that county, in a certain action pending before said justice, wherein Tenant, Walker & Co. were plaintiffs, and C. J. Kendall was defendant. The case was appealed, and tried at the April Term, 1877, of the district court, by the court, upon an agreed statement of facts. Findings and judgment for the plaintiff. *Frankhouser* brings the case here for review. The opinion contains a sufficient statement of the facts.

*William Thomson*, for plaintiff in error:

The main statutes of Kansas, which bear upon the subject of the registration of chattel mortgages, are § 3 of "An act for the prevention of frauds and perjuries," (ch. 43 of Gen. Stat.,) and § 9 of article 2 of chapter 68 of the General Statutes, both of which sections took effect October 31, 1868. These two sections are, to all intents and purposes, the same as the New York provisions, unless the provision at the end of § 3, "this section shall not interfere with the provisions of law relating to chattel mortgages," makes a difference. We contend that the effect of the two statutes of Kansas will be exactly the same without as with that provision. The acts took effect at the same time, and when the two statutes are presented to any court, the court will construe them so as to give effect to both if possible; and unless it be absolutely necessary for a proper construction of each, it will not be held that the provisions of the one shall override those of the other.

Observe the manner in which the New York courts have held. The first enactment of that state was, in its provisions, the same in effect as § 3 of the fraud-and-perjury act of our own state, with the exception of having no clause relating to whether it should or should not interfere with sub-

sequent laws passed relating in any way to its subject-matter.
Subsequently, that state enacted the provision above enacted,
relating to filing chattel mortgages. This last one is like the
provisions of our own law relating to the same subject.   In
construing both of these enactments of New York, what would
be the first rule the court would apply ?   Evidently this :
that if the second act interferes with the first, then the pro-
visions of the second, being the last expression of the legis-
lative will, must govern.   This rule was applied ; but it was
decided that no conflict arose between the two acts, and that
there was no repeal of the first by any implication drawn
from the second.   If, then, the courts of that state have al-
ready applied the rule of general law, and come to the result
specified, can the courts of this state, in applying the same
rule of construction — although that rule is made a part of
the statute itself — come to any other different conclusion ?
We believe, then, with the New York and Minnesota courts,
that our registration or filing of chattel mortgages is not
equivalent to a change of possession; and that, where the
mortgaged property is left with the mortgagor, the transac-
tion is presumed to be fraudulent, even though the mortgage
has been properly filed; but that such presumption may be
overthrown by evidence of good faith.

Our statute does not, like the enactments of some states,
contain the express provision that the filing of the mortgage
shall operate and have the same effect as a change of posses-
sion.   Such a provision is contained in the Iowa statutes con-
cerning the filing of chattel mortgages; and therefore the
decision of the Iowa court, upon which the defendant in er-
ror so fully relies, is no proper rule for guidance in Kansas.
See §§ 2201 (1193) and 2203 (1195), ch. 93, Rev. Stat. of 1860.
The concluding part of § 2203 is as follows: "And from
the time of said entry, and not before, shall the sale or mort-
gage be deemed complete as to third persons, *and shall have
the same effect as though it shall have been accompanied by the
actual delivery of the property so sold or mortgaged.*"   That
portion of the quotation expressed in *italics* is not found in

9 — 22 KAS.

the Kansas laws.   We, then, not moored to the shore by the cable of legislative enactment, must sail on the swelling flood of the common law, wafted toward a sure and safe harbor by the breezes of a thousand decisions.

There is a class of chattel mortgages which present themselves to courts with increasing frequency.   These are given by merchants upon the stock of goods in their shops and stores, while permitted, either by the terms of the mortgage or by agreement with the mortgagee *dehors* the instrument, to continue selling the same goods in the usual course of business.   Many decisions have been made by the courts upon both classes of such cases.   Some of these authorities we shall cite and review.

(*a*) In reference to mortgages, with the possession given to the mortgagor by the mortgagee, and power of sale given mortgagor, *dehors* the mortgage: In the case of *Griswold v. Sheldon*, 4 N. Y. 581, the court says:

"It is apparent from the face of the instrument, when read with reference to the nature of the case and the existing state of things at the time it was given, that the parties intended that Burdick should do just what he did do; that he should go on selling the goods as a merchant, and dealing with them in all respects as though he were the absolute owner.   Thus he acted down to the time of the first levy, when there had been no default on his part, and he was by the terms of the mortgage entitled to the possession of the goods to the exclusion of the plaintiff.   On this case the judge below refused to non-suit the plaintiff, holding that the mortgage was not void in law against the creditors of Burdick, and left it to the jury to say whether the mortgage was made to hinder, delay or defraud the creditors of Burdick, and whether a sufficient reason or excuse had been given for permitting Burdick to have possession of the goods.   I am far from thinking this a proper disposition of the case.   The parties not only stipulated for continued possession in the mortgagor, a thing which the legislature has condemned as presumptively fraudulent against creditors, but I have been unable to read the conveyance with a knowledge of the surrounding circumstances without coming to the conclusion that the parties intended that Burdick should deal with the goods as his own.  .  .  .  But if the intention to

allow Burdick to dispose of the mortgaged property as owner cannot be gathered from the face of the deed, still the goods were left in his possession, and he was in fact allowed to deal with them as owner and dispose of them as a merchant to his customers, from the date of the conveyance down to the time of the levy. Such a transaction the law always has, and I trust always will, pronounce a fraud upon creditors and purchasers; and the judge should have so ruled at the circuit."

In support of this proposition, the court cited, with approval: *Wordall v. Smith*, 1 Campb. 332; *Paget v. Perchard*, 1 Esp. 205; *Jordan v. Turner*, 3 Blackf. 309; *Divver v. McLaughlin*, 2 Wend. 596; *Wood v. Lowry*, 17 Wend. 492; *Goodrich v. Downs*, 6 Hill, 438; *Barney v. Griffin*, 2 Comst. 365. It is true that the court was divided, but the majority of the court approved of the decision, and it was always followed afterward in that state. See 9 N. Y. 213; 19 id. 123; 28 id. 360; 13 id. 359; 24 id. 359; 8 Bosw. 129. See also, *Steinart v. Deuster*, 23 Wis. 136; *Place v. Langworthy*, 13 Wis. 629.

This doctrine of the mortgage being fraudulent in law under such circumstances—"an oral agreement between the mortgagor and the mortgagee of chattels, that the former shall retain possession of the goods, and sell them in the regular course of his business, and apply the proceeds to his own use in the support of his family and otherwise," and void as to the creditors of the mortgagor—has been universally held to be the law in the states of Ohio, Minnesota, Illinois, Alabama, New Hampshire, Missouri, Indiana, Georgia, Tennessee, Wisconsin, and New York.

(*b*) Concerning mortgages with the possession and power of sale given by the mortgagee to the mortgagor: That such mortgages are void, we refer to *Freeman v. Rawson*, 5 Ohio St. 1; *Harman v. Abbey*, 7 Ohio St. 218.

The supreme court of Wisconsin, in *Place v. Langworthy*, 13 Wis. 704, says:

"The following are some of the cases where a stipulation in the mortgage, permitting the mortgagor to retain the possession of a stock of goods, and to make purchases from time

to time, and to sell off in the ordinary manner, were held to be only *prima facie* evidence of fraud, which might be rebutted by circumstances showing the transaction was fair and honest: *Briggs v. Parkman*, 2 Metc. (Mass.) 258; *Jones v. Huggeford*, 3 id. 515; *Barnard v. Eaton*, 2 Cush. 294; *Abbott v. Goodwin*, 20 Me. 408; *Oliver v. Eaton*, 7 Mich. 108; *Gay v. Bidwell*, id. 519.

"The doctrine, I understand, is disapproved of in the following authorities, which hold that such a provision in a chattel mortgage on a stock of goods vitiates the instrument, and renders it void in law: *Divver v. McLaughlin*, 2 Wend. 596; *Wood v. Lowry*, 17 Wend. 492; *Griswold v. Sheldon*, 4 Comst. 580; *Gardner v. McEwen*, 19 N. Y. 123; *Collins v. Meyers*, 16 Ohio, 547; *Freeman v. Rawson*, 5 Ohio St. 1; *Harman v. Abbey*, 7 Ohio St. 218; *Jordan v. Turner*, 3 Blackf. 309; while such provisions, in assignments for the benefit of creditors, have generally been held to render such assignment void as to creditors. (*Brooks v. Wimer*, 20 Mo. 503; *Walter v. Wimer*, 24 Mo. 63; *Stanley v. Bunce*, 27 Mo. 269; *Billingsley v. Bunce*, 28 Mo. 547; *Davis v. Ransom*, 18 Ill. 396.)

"We have no hesitation in saying that a clause in a mortgage like the one under consideration, which expressly authorized the mortgagor to retain possession of the mortgaged goods, and to deal with and dispose of them in the ordinary and regular course of retail trade, paying out of the proceeds of the sales all necessary store and business expenses, together with all expenses for the support of the mortgagor and his family for an indefinite period, so long as the excess, if any there were, was deposited to the credit of the mortgagees, is a provision directly calculated, in our judgment, to hinder, delay and defraud creditors, and therefore is strictly within the statute of frauds."

See, also, Herman on Chattel Mortgages, 238; *Robinson v. Elliott*, 22 Wall. 513.

There are many other cases supporting a like doctrine, but it is unnecessary to multiply authorities. There are but few courts — those of Iowa, Maine and Michigan — that array themselves in opposition.

From these decisions, considering both the number and weight to be given them, we deduce the following principles: That a chattel mortgage is void as to the creditors of the mortgagor when it contains a provision within itself, or when

there is, outside of the instrument, an agreement with the mortgagor that the mortgagor is to have the possession and power of disposition of the mortgaged property; that where this power appears on the face of the instrument, it is purely a question of law for the court; that where this power is given by agreement outside of the mortgage, it is a question of fact for the jury to decide, under an instruction from the court that if they believe these facts to exist, they must find the mortgage fraudulent.

[After an argument upon the agreed statement of facts, counsel for plaintiff in error concluded with the following summary:]

From the principles regarding chattel mortgages already adverted to in the authorities cited, as applied to the facts as they appear in this-case, we are irresistibly borne to the following conclusions: 1st. That the mortgagor having by the terms of the mortgage the possession of the mortgaged property, the burden of proving *bona fides* is upon the defendant below; 2d. That the mortgage having been properly filed, does not change the rule; 3d. That the mortgage, under the circumstances mentioned in this case, was not only presumptively but actually fraudulent; 4th. That the court should have so declared as a matter of law upon the facts admitted.

We therefore claim: 1st. That the court below erred in its findings of fact; 2d. That it erred in its conclusions of law; 3d. That the court should have granted a new trial; 4th. That judgment should have been given for the defendant below.

*Ruggles, Scott & Lynn,* for defendant in error:

1. The counsel for plaintiff in error contends that in this state every chattel mortgage is presumed to be fraudulent as against creditors, etc., unless the mortgagee takes possession of the mortgaged property; that registration is not equivalent to a change of possession; and that our statute in reference to this matter is similar to the statutes of New York

and Minnesota. We submit, however, that the statutes are not similar. The New York statute provides that every transfer of personal property by way of mortgage or otherwise, unless accompanied by an immediate delivery, etc., shall be presumed to be fraudulent and void as against creditors, and be conclusive evidence of fraud, unless it be made to appear that the same was made in good faith, and without any intent to defraud. This is § 5 of their statute of frauds; and it is followed by § 9, in regard to the effect of filing, and this section is substantially our own statute. See §§ 6 and 9, title 2, ch. 7, Rev. Stat. N. Y. (5th ed.), p. 222; Gen. Stat Kas., § 9, ch. 68, p. 584. The Minnesota statute of frauds and law, in regard to chattel mortgages, are similar to those of New York. Under these statutes, the courts of these states have held, and perhaps properly, that the filing of the mortgage is not legally equivalent to actual delivery and continued change of possession, but that the statute in regard to filing "merely adds to the grounds on which a mortgage of personal chattels shall be void." In other words, they decide that all mortgages spoken of in § 6 are presumed to be fraudulent, and such mortgages under § 9 are absolutely void, unless they are filed. (See cases cited by plaintiff in error.) This court will however notice, that while our statute in reference to these mortgages is substantially like those of these states, and while our statute of frauds is something like those, yet the latter statute contains an addition which takes chattel mortgages out of its operation, and leaves all such instruments to be governed by § 9 of chapter 68. (Gen. Stat., ch. 43, p. 504, § 3.) The provision is: "This section shall not interfere with the provisions of law relating to chattel mortgages." We do not dispute the rule of construction laid down by counsel for plaintiff in error. Effect must be given to both the statute of frauds and the statute governing chattel mortgages. Section 3, chapter 43, "shall not interfere" with article 2, chapter 68; but if counsel's construction be correct, it does interfere, because that construction raises a presumption of fraud, from the fact of pos-

session by the mortgagor, which finds no countenance in said article 2, chapter 68. All the "provisions of law" about chattel mortgages contemplate that the mortgaged property may rightfully remain in the possession of the mortgagor; and § 9 only provides that if there is no change of possession, the mortgage shall be void, unless it is filed. In other words, under our statutes the filing of a chattel mortgage is equivalent to delivery and change of possession; and every mortgage so filed, unless void on its face, is not only not presumptively fraudulent, but is *prima facie* valid. This has been substantially decided in many states. ( 16 Pick. 33, 466; 19 id. 211; 20 Iowa, 401; 24 id. 320.) Where the supreme court of that state construe our chattel-mortgage law, compare it with their own, and arrive at the conclusion that they are identical, counsel for plaintiff in error comes to a different conclusion. (*Miller v. Whitson, et al.*, 40 Mo. 97; *Harrington v. Brittan, et al.*, 23 Wis. 541; *Call v. Gray*, 37 N. H. 428.)

2. The chattel mortgage in question is valid on its face. This is conceded by counsel on the other side — at least he points out no defects appearing on its face which would or could defeat it; therefore, if there was any intent in this case to hinder, delay or defraud creditors, it must be established by extrinsic evidence, and the authorities are uniform that in such case the intent is not to be inferred by the court, but becomes a question of fact to be proved. (*Horton v. Williams*, 21 Minn. 187; *Ewing v. Gray*, 12 Ind. 64; *Maples v. Burnside*, 22 Ind. 139; *Allen v. Wheeler*, 4 Gray, 123; *Banfield v. Whipple*, 14 Allen, 13; *Green v. Tanner*, 8 Metc. 411; *Bagg v. Jerome*, 7 Mich. 145; *Marden v. Barbeck*, 2 Metc. 99; *Kline v. Katzenberger*, 20 Ohio St. 110; *Ford v. Williams*, 24 N. Y. 359; *Miller v. Lockwood*, 32 N. Y. 293.) As the mortgage in question contains no unlawful provisions, it can only be avoided for proof of fraud in fact: 7 Mich. 145, 108, 519, and cases above cited.

3. Counsel on the other side argue that a mortgage, valid on its face, is absolutely void as a matter of law, and the court must so hold it when the property mortgaged consists

of a stock of goods, and the mortgagor is permitted to remain in possession under an arrangement and circumstances similar to those in the case at bar.   In support of his position, he relies largely upon the New York decisions, and the decisions of courts in other states which have followed in the wake of the New York courts.   Without going into any detailed examination of these decisions, we would call this court's attention to this fact: that in New York, the possession of mortgaged property by the mortgagor is condemned as presumptively fraudulent; that, under the doctrines of the earlier cases, there never could be a valid chattel mortgage upon a stock of goods, and that from the earliest times, the effort has been, in that and other states, to make the necessities of modern business yield to the rules long since established.   But even in New York, under the later decisions, such a mortgage would only be presumptively fraudulent; and where evidence is given in respect to the *bona fides* of a mortgage to rebut the presumption, the question of fraudulent intent is still one of fact; and "an agreement between mortgagee and mortgagor, that the latter shall sell the mortgaged property for cash only for the benefit of the mortgagee, does not render the transaction fraudulent.   Such agreement only raises the question of good faith for the jury." (*Miller v. Lockwood*, 32 N. Y. 293.)   And this doctrine, although not always acquiesced in in that state, was laid down by the court of errors in *Smith v. Archer*, 23 Wend. 653.

Now we contend that, even in a case which falls within the positive terms of our statute of frauds, there is no presumption that the purchaser has been engaged in a fraudulent transaction, and that the meaning of our statute is simply this: "The mere production of a bill of sale, which would be sufficient as against the vendor, is not sufficient as against a creditor or subsequent purchaser, and he must supplement his bill of sale with proof of good faith and payment of value."   This is required where possession does not follow the sale. (*K. P. Rly. Co. v. Couse*, 17 Kas. 571.)

The provisions of the chattel-mortgage law permit the

possession by the mortgagor, and provide a substitute for the express purpose of giving creditors and subsequent purchasers that and only that which a change of possession would give—notice; and when that notice is given by filing the mortgage, the transaction stands just precisely as it would stand had the notice been derived from a change of possession, and surrounded with all the presumptions of good faith and innocence which accompany any valid transaction.   The party who seeks to attack it on the ground of fraud, must show the fraudulent intent.   It won't do for counsel to say that this intent on the part of Ellett herein might be inferred from this thing or from that fact, or from all the facts admitted to have existed in the agreed statement before the court, when it is admitted that he took the mortgage in good faith for the purpose and with the intent *solely* of securing a *bona fide* indebtedness for borrowed money, and as accommodation indorser.   Such a procedure would be overthrowing the conceded fact of good faith, with an inference of fraud drawn from the other facts.

But it is strenuously insisted, that from the facts that *after* the mortgage was given, Kendall, by agreement with Ellett, remained in possession, sold goods in the usual way, deposited proceeds to credit of Ellett to be applied on the mortgage claim, and, with Ellett's authority, used portions of the mortgaged goods necessary to support his family from March 9, 1876, to May 13, 1876; that from these facts the court must decide as questions of law, that the mortgage is fraudulent.   This is not law.   And in addition to what we have already said about this matter, we call attention to the following cases: *Oliver v. Eaton,* 7 Mich. 108; *Gay v. Bidwell,* 7 id. 521; *Fry v. Russel,* 35 id. 229; *People v. Bristol,* 35 id. 28; *Hughes v. Cory,* 20 Iowa, 399; *Mitchell v. Winslow,* 2 Story, 630; *Jones v. Huggeford,* 3 Metc. 515; *Briggs v. Parkman,* 2 id. 258; *Codman v. Freeman,* 3 Cush. 306; *Googins v. Gilmore,* 47 Me. 9; *Jessup v. Bridge,* 11 Iowa, 572; *Wilhelm v. Leonard,* 13 id. 330; *Torbet v. Hayden,* 11 id. 435;

*Campbell v. Leonard,* 11 id. 489; *Levy v. Welsh,* 2 Edw. Ch. 438; *Stedman v. Vickery,* 42 Me. 132; *Barnard v. Eaton,* 2 Cush. 294; *Benton v. Thornhill,* 7 Taunt. 149; *Brinley v. Spring,* 7 Me. 241; *Abbott v. Goodwin,* 20 id. 408; *Macomber v. Parker,* 14 Pick. 497; *Brett v. Carter,* 3 Cent. L. J. 286. And we would particularly call the court's attention to 24 Iowa, 320, which declares the mortgage laws of Iowa and Kansas to be similar, and to *Hughes v. Cory,* 20 Iowa, 399.

4. Again, we insist that it cannot be said as matter of law that this arrangement invalidated the mortgage, and submit that the instrument would have been valid had these provisions been contained in it, because they are all for the benefit of the mortgagee, and beneficial to the creditors of the mortgagor. The very object of such security is to bring about the satisfaction of the debt. All the property used went by agreement to refund money advanced by Ellett to take up one of the notes mentioned in the mortgage, except such small proportion thereof as went to the support of Kendall's family, and which Ellett authorized him so to use. This power is not "such as to leave in the mortgagor a dominion over the property inconsistent with the alleged lien of the mortgage," upon which principle all the adverse decisions are based. See cases above cited. (*Klein et al. v. Katzenberger,* 20 Ohio St. 117; *Metzner v. Graham,* 57 Mo. 404; *Miller v. Lockwood,* 32 N. Y. 293; *Hawkins v. Hastings' Bank,* 1 Dill. 462.)

5. The most that can be legally claimed by plaintiff in error, by reason of these provisions, is, that they are evidence proper enough to be considered in determining what was the intent of the parties *at the time* the mortgage was given. They cannot be said to conclusively show the intent *then* existing, because this agreement was made and these things done "after the execution of said chattel mortgage," and the character of the instrument depends on the intent existing at the time it was made. (*Horton v. Williams,* 21 Minn. 192; Bump on Fraudulent Con. 362.)

*James Rogers*, and *E. M. Sanford*, for defendant in error:

1. Section 15 of ch. 68, Gen. Stat., reads as follows: "In the absence of stipulations to the contrary, the mortgagee of personal property shall have the legal title thereto and the right of possession." This is equivalent to saying if it be stipulated between the parties, the mortgagor shall have the legal title and right of possession. Here the parties contracted that Kendall should have possession, thus bringing the question within the statutes. If the legislature provides that certain parties can retain possession of property by stipulation, is it not improper to conclude that the very possession given under such a stipulation is presumptive evidence of fraud, or even the slightest evidence thereof? Hence it would appear that authorities from other states, holding that possession by the mortgagor is fraudulent either in law or fact, are not applicable. We must go outside of the mere possession to find fraud in a chattel mortgage.

2. We do not think that the registration of this mortgage can be called in question for any purpose. "The mortgage was executed and delivered by Kendall to Ellett on the 9th of March, 1876, and filed for record on the 10th of March, 1876." It was not, therefore, void within the meaning of § 9, ch. 68, Gen. Stat. The question of the right of possession, if recorded, is governed by § 15 of the same chapter. Therefore, Iowa authorities and decisions of states which have no such provision as § 15, are not applicable.

3. As to the right of Kendall to prefer Ellett, it is admitted that Ellett was a creditor; that the indebtedness was valid and *bona fide*, and above twice the amount of all the other creditors together. It is well settled in this state, that a debtor has a right to prefer his creditors. (*Monroe v. May*, 9 Kas. 472.)

4. A branch of this question of fraud has been settled in this state, to-wit: That a debtor may dispose of his property with an intent to defraud his creditors, to a purchaser who acts in good faith, and for a valuable consideration. (*Diefen-*

*dorf v. Oliver,* 8 Kas. 365; *Wilson v. Fuller,* 9 id. 187.) See also, *Gridley v. Bingham,* 51 Ill. 153; *Collins v. Cook,* 40 Tex. 238; *Drummond v. Course,* 39 Iowa, 442; *Erle v. Cole,* 31 Ark. 554; *Nathan v. King,* 21 Cal. 54.

5. The funds derived from the sale of the goods were applied to the payment of the security debts as fast as paid in. The goods purchased with Ellett's money were all necessary staple goods, and were purchased for the purpose of keeping up an assortment, and to assist in disposing of the goods under mortgage. These goods were kept separate from the other goods, so they could be identified. Now the foregoing is nearly all the material evidence tending to show that Ellett participated in an intent on the part of Kendall to defraud his creditors; and after a close examination, we fail to find any evidence that shows that Ellett has any knowledge that Kendall intended to hinder, delay, or defraud his creditors. The question of fraud has resolved itself in this case from one of law to one of fact, and the burden of proof is on the defendant below to show fraud. All his proof is here: "Courts do not conjecture bad faith." (*Monroe v. May,* 9 Kas. 472.)

6. Again, it is not shown what the mortgaged stock was valued at, either at the execution of the chattel mortgage or at any other time. It does not appear that the mortgage was upon an unreasonably large amount of property, or was in any of its provisions out of the ordinary course of business, or unreasonably exacting or oppressive: 16 Kas. 530. See also, *Kerr v. Hutchins,* 46 Tex. 384; *Ferguson v. Spear,* 65 Me. 277; *Hill v. Bowman,* 35 Mich. 191; 35 Conn. 469; 81 Ill. 310; 1 Mo. App. 37; *Avery v. Easter,* 18 Kas. 507; *Chase v. Walton,* 28 Iowa, 204; *Cuendet v. Lahmer,* 16 Kas. 529; 42 N. Y. 421; 7 Coldw. (Tenn.) 364.

7. "A chattel mortgage is not void because it provides that the mortgagor should remain in possession, receiving the proceeds and paying the same to the mortgagee, although it has the effect to postpone other creditors." (*Adler v. Claflin,* 17 Iowa, 80.) In *Abbott v. Goodwin,* 7 Shep. 408, it was de-

cided : "If the mortgagor sell the goods mortgaged and left ·
in his possession, and with the proceeds thereof purchase
other goods, these last represent the first, and are substituted
for them, and are equally subject to the lien of the mort-
gagee thereon; so if the mortgagor exchange the goods mort-
gaged for other goods, and the mortgagees choose to ratify
the act, the goods received in exchange are equally subject
to their lien." See *Wolfe v. Doer*, 11 Shep. 104; *Cutler v.
Copeland*, 6 id. 127; *Pichard v. Low*, 3 id. 48; *Smith v. Acker*,
23 Wend. 653; *Cole v. White*, 26 id. 511; *Sawyer v. Eastwood*,
19 id. 514; *Russell v. Butterfield*, 21 id. 300; *Nat. Bank of
Metropolis v. Sprague*, 20 N. J. Eq. (5 C. E. Gr.) 13; *Cobb v.
Farr*, 82 Mass. 597; *Holley v. Brown*, 14 Conn. 255; *Haw-
kins v. Bank*, 1 Dillon, 462; *Gay v. Bidwell*, 7 Mich. 519;
*Hughes v. Cory*, 20 Iowa, 399; *Veazie v. Somersby*, 5 Allen
(Mass.), 280; *Conklin v. Shelby*, 28 N. Y. 360; *Wolfley v. Ris-
ing*, 12 Kas. 535; *Anderson v. Howard*, 49 Ga. 313; 11 Metc.
(Mass.) 403; *Adams v. Wilde*, 107 Mass. 123.

The opinion of the court was delivered by

BREWER, J.: Action of replevin. Judgment in favor of
plaintiff, defendant in error, to review which this proceeding
in error has been brought. Passing by all preliminary ques-
tions as to the sufficiency of the record, we pass to a consid-
eration of the substantial matters in dispute. The case was
tried by the court, without a jury, and upon an agreed state-
ment of facts.

This statement of facts shows that on March 9th, 1876,
one Charles J. Kendall was indebted to the defendant in
error, Ellett, for money borrowed — $3,263.43 — and as an
accommodation indorser for $2,500. To secure this, Ken-
dall executed to Ellett the chattel mortgage set out in the
record, which was recorded in the proper office on March
10th, 1876. This borrowed money became due about May
9th, 1876. The notes on which Ellett was indorser became
due respectively about March 24th, 1876, and about April
14th, 1876. About May 13th, 1876, Tenant, Walker & Co.

·sued out an attachment against said Kendall, which came into the hands of plaintiff in error, an officer, and on said day a portion of the property so mortgaged was seized by said officer, under said attachment; and thereupon this action of replevin was commenced by Ellett, an order of delivery duly issued, and the said attached property taken and delivered to Ellett. The decision of this case depends upon the question as to whether or not this mortgage is valid. The stipulations in the chattel mortgage, so far as material, are in these words:

"The property sold is to remain in the possession of the said party of the first part until default be made in the payment of the debt and interest and indorsed notes aforesaid, or some part thereof; but in case of a sale or disposal, or attempt to sell or dispose of the same, or a removal of or attempt to remove the same from said county of Osage, or an unreasonable depreciation in the value, or if from any other cause the security shall become inadequate, the said party of the second part may take such property, or any part thereof, into his possession; and upon taking such property into his own possession, either in case of default or as above provided, said party of the second part shall sell the same at public or private sale, and after satisfying the aforesaid debt and interest thereon, and all necessary and reasonable costs, charges and expenses incurred, out of the proceeds of sale, he shall return the surplus to said party of the first part, or his legal representatives; and if from any cause said property shall fail to satisfy said debt and interest aforesaid, said party of the first part hereby agrees to pay deficiency."

It is admitted that the notes secured by said mortgage represented a valid and *bona fide* indebtedness of said Kendall. There is no admission that, at the time said mortgage was executed, Kendall had or ever entertained any idea or intention, by its execution or otherwise, to hinder, delay or defraud his creditors; nor is there any evidence of any such idea or intention, unless it can be said, as matter of law, from all the facts in the agreed statement, that he had such intention.

It is agreed that Ellett had no knowledge, at the time the mortgage was given, that Kendall intended either to hinder, delay or defraud his creditors, unless the facts of which he

did have knowledge should be deemed knowledge of such intention, and that he took the mortgage in good faith for the purpose and with the intention solely of securing his said claim against said Kendall, unless the facts stated show a want of good faith.

The only other facts in the statement that can be material, are: That at the time the mortgage was given, Kendall owed several parties in different amounts, aggregating about $1,850; that the mortgage in question covered all Kendall's property except about $2,000 in accounts, $1,600 of which were considered by Kendall to be good, and three town lots valued at $27.50. Ellett had knowledge that some of these claims were sent to the bank of which he was president for collection, and that K. could not pay his indebtedness in the usual course of his business. At this time K. made an effort to get extensions from all his creditors except Ellett, and before he got these extensions Ellett consulted an attorney, under whose advice the mortgage was given, said attorney informing Ellett that if the mortgage was duly filed for the period of two months the lien created by it would be valid. The mortgage was executed. Kendall got his extensions "under the impression and with the hope that before said indebtedness could again mature, he would be able to sell his entire stock of goods and pay his debts, and with the hope of avoiding the odium of having failed in business." Kendall did not inform these creditors that he was about to give this mortgage. After the execution of said mortgage, Kendall, with the consent, knowledge and agreement of Ellett, continued in his business of general merchant, and with Ellett's consent and agreement held and controlled said mortgaged goods, disposed of the same in the usual way, received and controlled the proceeds and made deposit thereof, amounting to $1,350, in the Osage City Savings Bank, in the name of Ellett, for the purpose of having the same applied to the refunding to Ellett money advanced by him to take up the note of $2,000 to said bank, upon which Ellett was accommodation indorser as aforesaid, and which $1,350

was so applied.   Kendall was permitted to buy goods to replenish the stock, and check upon Ellett's account in said bank to pay for same, and did so check to the extent of about $400 for a few necessary staple goods to keep said stock in order, which goods were bought and shipped in Kendall's name, and placed in his store-room with the said mortgaged goods, but were always so kept by K. separate from the mortgaged goods.   Kendall also, with the knowledge and consent of Ellett, used groceries and goods out of his store and said mortgaged goods and money derived therefrom, necessary to support his family from the time the mortgage was given, March 9, 1876, to May 13, 1876.   It may be added that Tenant, Walker & Co., and said plaintiff in error, had actual notice and knowledge of said mortgage at the time of said levy under the attachment, and that Ellett protested against the levy.

The statutes of Kansas that have any bearing upon this subject, are § 3 of the act for the prevention of frauds and perjuries, which reads: "Every sale or conveyance of personal property unaccompanied by an actual and continued change of possession, shall be deemed *to be void*, as against purchasers without notice, and existing or subsequent creditors, *until* it is shown that such sale was made in good faith and upon sufficient consideration.   This section shall not interfere with the provisions of law relating to chattel mortgages."   And § 9 of art. 2, of ch. 68: "Every mortgage, or conveyance intended to operate as a mortgage, of personal property, which shall not be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things mortgaged, shall be *absolutely void* as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, *unless* the mortgage, or a true copy thereof, shall be forthwith deposited in the office of the register of deeds in the county where the property shall then be situated, or, if the mortgagor be a resident of this state, then of the county of which he shall at the time be a resident."

The first proposition of counsel for plaintiff in error is, that as the possession of the mortgaged property was retained by the mortgagor, the mortgage, although duly filed in the office of the register of deeds, must be deemed to be void as against creditors, until shown to have been made in good faith and upon sufficient consideration, and that no such showing having been made, the district court erred in not holding the mortgage void. In other words, he contends that the same rule applies in mortgages as in sales, and that retention of possession is presumptive evidence of fraud; that the failure to deposit the mortgage in the register's office renders the instrument absolutely void, while the depositing does not make it even *prima facie* valid. Depositing is absolutely essential to the validity of a chattel mortgage; without it none can be enforced against creditors. Delivery of possession of the mortgaged property, or proof of good faith and sufficient consideration, is also essential; so that a mortgagee must prove more than a vendee. A party who claims only a lien, must do more to make his lien good than one who claims full title. Of course, a legislature may so order, but its language should be explicit. A doubt would be solved against an intention to so order.

In support of his views, counsel has furnished us with an elaborate argument, fortified by an abundant citation of authorities. Yet we cannot agree with his law or assent to his view of the facts. An examination of the authorities would be useless; to reconcile them is impossible. It will be sufficient to state our conclusions, and refer to a few of the leading authorities sustaining them.

There is nothing inherently vicious or against public policy in a mortgage. The right to mortgage is an incident to ownership. As a man may sell, so may he mortgage his personal property. Possession is not an essential element of title. A man may own property in another's possession. This is universally recognized in cases of loan, agency, and bailment; and the owner, in such cases, does not forfeit his title, or the right to assert and protect it even against third

10 — 22 KAS.

parties, by the mere fact of non-possession. If an owner may surrender his possession without losing title, why may not one acquire a good title without acquiring possession? Must the origin of title be accompanied by possession, to make it perfect against third parties? There seems to be no sufficient reason therefor. A failure to deliver possession may be evidence tending to show no sale, or a lack of good faith; but as a delivery of possession is not essential to a transfer of title, a want of it is not conclusive evidence that there was no sale. A sale or mortgage is good *inter partes* without delivery of possession; so the authorities agree. If it is void as against creditors, it should be because some wrong is thereby done to them; but if the transaction is in good faith, and they have notice of it, wherein are they wronged? If they claim that they are wronged, ought they not to prove the fact?

A mortgage is a lien. The grantor does not purport to transfer his entire interest. He retains all not necessary to perfect the security. Possession may be of little benefit to the grantee, but of great benefit to him. Why should he, after notice is given to the world of what has been done, be compelled to surrender that which is of so much benefit? A mortgage differs from a pledge, in that possession is necessary to perfect the latter, and not the former. If possession is not necessary, why should a lack of it be held a wrong? Why should that which is right in and of itself be considered evidence of wrong?

But it may be said that third parties, presuming title from possession, may be misled, to their prejudice. But with notice, they cannot be misled. Registration is notice.

Again, it is said that such a transaction may be used as a cover for wrong. So may almost any transaction. A delivery of possession is not conclusive against wrong. Why should a legitimate transaction be condemned because improper use may be made of it? But the statute concerning sales says a failure to deliver possession is *prima facie* evidence of wrong as against creditors. True; but in sales

there is no registration, and therefore no notice. In mort-, gages, there is registration and notice.

Again, the statute impliedly grants the right to stipulate. for a retention of possession by the mortgagor. (Gen. Stat., p. 585, § 15.) Can that which the legislature authorizes to be done be construed to be evidence of wrong? Can an act done in pursuance of law be adjudged fraudulent *per se*, or even evidence of fraud?

Briefly, then, we hold that the statute authorizes a stipulation in a chattel mortgage for a retention of possession by the

1. Retention of possession of mortgaged property by mortgagor; fraud.

mortgagor, and that a possession retained in. accordance with the terms of such mortgage is not, when the mortgage is duly filed, *per se* fraudulent, or even *prima facie* evidence of fraud, as against creditors or subsequent purchasers. *Gay v. Bidwell*, 7 Mich. 521; *People v. Bristol*, 35 Mich. 28; *Hughes v. Cory, Adm'r*, 20 Iowa, 399; *Smith & Co. v. McLean*, 24 Iowa, 322; *Briggs v. Parkman*, 2 Metc. (Mass.) 258; *Jones v. Huggeford*, 3 Metc. (Mass.) 515.; *Googins v. Gilmore*, 47 Me. 9; *Brett v. Carter*, U. S. Dist. Ct., 3 Cent. Law Jour. 286; *Hunter v. Corbett*, 7 Upper Canada, Q. B. 75; *Bullock v. Williams*, 16 Pick. 33; *Forbes v. Parker*, 16 Pick. 466; *Shurtleff v. Willard*, 19 Pick. 211; *Miller v. Whitson, et al.*, 40 Mo. 97; *Harrington v. Brittan, et al.*, 23 Wis. 541; *Call v. Gray*, 37 N. H. 428; *Robinson v. Elliott*, 22 Wall. 513; *Golden v. Cockril*, 1 Kas. 267. Neither can we concur in the view taken by the learned counsel of the facts. They having been agreed to, this court can consider them as readily and fully as the district court. (*K. P. Rly. Co. v. Butts*, 7 Kas. 308.) And our conclusion agrees with that of the district court, rather than that of counsel. We think the facts show good faith and sufficient consideration. The latter is not disputed. It is admitted that the debt was a valid subsisting debt, one that Kendall was justly bound to pay. Nor is there any suggestion even that the mortgage was given to secure more than the actual indebtedness. Being an honest debt, Kendall had a right to prefer it, and Ellett a right to

seek a preference, even though such preference paid his debt in full, and left the other creditors nothing. (*Cuendet v. Lahmer*, 16 Kas. 527.) Did Kendall intend to defraud his other creditors? That he preferred his largest creditor, though a relative, is not evidence of such intention. The exercise of an undoubted right does not show wrong. He sought an extension of the other claims, but he did this in the hope of selling his entire stock and paying all claims. There is nothing to show that this was not a reasonable and justifiable expectation. If so, it does not indicate an intention to defraud. He continued in business, and the proceeds of the sales, with the exceptions to be hereafter noticed, were applied to the payment of his preferred creditor. This does not look like intent to wrong. If he had appropriated the proceeds of such sales, or squandered them, such conduct might be significant of wrong; but applying them fairly and honestly to the payment of his debts, although all went to one creditor, shows honesty of purpose. Again, while the mortgage covered doubtless the bulk of his property, he retained, uncovered by its lien, property deemed by him of sufficient value to nearly discharge all other indebtedness. This again looks like honest dealing. It shows he was not seeking to cover his entire property. That he was doing something of a business, is evident from the amount of his cash sales and payment on Ellett's debt; and it would seem a not unreasonable expectation that if he was permitted to continue his business, he would soon be able to discharge all his indebtedness. But further, whatever may have been his secret thought, Ellett had no knowledge of any intent to defraud his other creditors, unless, as stated, such knowledge can be implied from knowledge of the other facts stated. What are they? That he was indebted to other parties: that would be good reason for seeking security and preference, but would not imply either wrong intent on Kendall's part, or knowledge of such intent in Ellett. That Kendall was seeking and obtaining extensions: but that would seem to be the best way consistent with security and preference to Ellett of paying such creditors.

To stop business, and turn his property over to Ellett, to be closed out at forced sale, would not apparently inure to the interest of such creditors, or leave much for the payment of their claims. So far as can be gleaned from the facts stated, it would appear that Kendall was pursuing the best policy consistent with his undoubted right to prefer Ellett—of protecting his other creditors; and Ellett's knowledge of these facts cannot fairly be tortured into knowledge of a secret intent of Kendall's to defraud them.

Again, Kendall was permitted to replenish his stock; but the character of the goods purchased, the manner in which they were purchased and paid for, and subsequently held by Kendall, strongly indicate good faith. Only a few necessary staple goods were purchased. Such purchases are always necessary to keep up the business and sell the other goods. Where all staple goods are sold, and their places not supplied, every one knows that business will fall away from the store, and that the sale of the other goods becomes slow, difficult, and generally at reduced prices; so that by such purchases Kendall was pursuing the very best course to enable him to realize the most out of his stock. Surely this does not indicate a purpose to let his creditors slip, and defraud them of their debts.

Again, the goods so purchased were not commingled with the mortgaged goods, but kept separate; and they were paid for by a new and unsecured loan from Ellett. To that extent, Ellett was foregoing his security and entering the list of unsecured creditors. It is as though Ellett was releasing some of the mortgaged goods from the servitude of his lien, and thus enlarging the amount of property available to the general creditors. Such conduct, so far from being evidence of bad faith, is very strong evidence to the contrary.

And it must further be borne in mind, that this was not part of the mortgage stipulation, but by virtue of a subsequent arrangement. It means simply that Ellett was willing to loan him $400 without security, to help him keep on in business and make the most profitable conversion of his property

into cash. Finally, Ellett permitted him to support his family out of the store and proceeds of sales. There is no agreement to this effect in the mortgage; still, it was done with Ellett's knowledge and consent. It does not appear how much was so used in the support of the family; it does appear that Kendall remained in charge of the goods, and continued the business. Such services some one must render to convert the goods into money, and such services call for compensation. If the business of reducing the assets to cash was pursued as steadily and rapidly as was consistent with obtaining fair value for them, and if the amount used for the support of his family was only half what would be reasonable compensation for the services, it is difficult to see how the creditors were wronged, or how such conduct could be held evidence of wrong intent. Of course, circumstances might be such that the appropriations from the store for support would cast grave suspicions on the *bona fides* of the transaction, but even then it would be simply one fact to be weighed with others. And where the simple fact appears that goods were used out of the store for the support of the one employed in making sales, with no statement of amount so used, or the value of such services, such fact can have little weight, and certainly cannot overthrow an otherwise admitted good faith. So that if the burden of proving good faith rested upon the mortgagee, we think the admitted facts show such good faith.

Another proposition of counsel is, that conceding good faith, the mortgage must be held invalid, because by agreement outside the mortgage the right to dispose of the goods and use the proceeds in support of his family was reserved to the mortgagor. It is claimed that, though the parties act in the utmost good faith, still the law will not sanction a transaction like that. Again we must dissent from counsel. We think the rule to be, that where a mortgage is given upon a stock of goods, and by agreement outside the mortgage the mortgagor is permitted to continue the business

2. Possession of mortgaged property by mortgagor; outside agreement, when not fraudulent, and how to be judged.

and dispose of the goods in the ordinary way, and use some portion of the proceeds in the support of his family, the transaction will be upheld or condemned according as it is entered into and carried out in good faith, or not. The mortgagor, if he may keep the possession, may as well make the sales as a stranger. He acts in that respect as a *quasi* agent at least of the mortgagee, and as such agent and salesman is entitled to compensation for his services. Doubtless such arrangements are liable to abuse, and should always be closely scanned; but still, they are not absolutely and in all cases to be adjudged void as matter of law. See, in support of this, the authorities heretofore cited.

There being no other question in this case, the judgment will be affirmed.

VALENTINE, J., concurring.

HORTON, C. J.: I do not concur in the decision in this case. I am clearly of the opinion that a chattel mortgage upon a stock of goods in trade, which permits by its conditions the mortgagor to remain in possession of the property, and to dispose of it by sale, in due course of trade, until the maturity of the debt proposed to be secured by it, is fraudulent in law as to the creditors of the person making the same, and as to subsequent purchasers, and is absolutely null and void as to them, without reference to the *bona fides* of the mortgage debt, or the intention of the mortgagor as to fraud. I further hold, that if the power of disposition does not appear upon the face of the mortgage, but is so understood or agreed by the parties at the time the mortgage is executed, it is equally void; and in continuation of the same views, it seems to me that the license allowed to the mortgagor in this case, to continue in his business of merchandising, and to dispose of the mortgaged goods and chattels to purchasers in his usual way; to receive and largely control the proceeds of the sales, to use portions of the goods, together with sufficient of the money derived in the business, to support himself and family, make the chattel mortgage in issue absolutely null

and void as to creditors and subsequent purchasers — at least until the license is revoked by the mortgagor. After all, with such a license in force, the so-called mortgage resolves itself merely into personal security. The power granted to the mortgagor by the mortgagee enables the latter to defeat the provisions of the instrument. For the time being, the exercise of this power destroys it. It is completely *felo de se.*

Again, this mortgage, accompanied with the license to the mortgagor, is of no great advantage to the mortgagee, but benefits the debtor, and is exceedingly injurious to other creditors. Indeed, its main purpose is as a ward to keep off other creditors. When agreements are made to hinder and delay creditors, the law imputes to them a fraudulent purpose, and therefore they are held null and void. I think a like imputation lies against the arrangement of the parties to this chattel mortgage, and that upon the agreed statement of facts, judgment should have been rendered in favor of the plaintiff in error. In support of these views, I refer to the following: *Robinson v. Elliott,* 22 Wall. 513; *Collins v. Myers,* 16 Ohio, 547; *Freeman v. Rawson,* 5 Ohio St. 1; *Harman v. Abbey,* 7 Ohio St. 218; *Griswold v. Sheldon,* 4 Comst. 581; May on Vol. and Fraudulent Conveyances, 126; *Twyne's Case,* 3 Coke, 80; *Ryall v. Rowles,* 1 Ves. Sr. 348; *Worseley v. De Mattos,* 1 Burr. 467; *Paget v. Perchard,* 1 Esp. 205; *Wordall v. Smith,* 1 Campb. 332; *Lang v. Lee,* 3 Rand. 410; *Addington v. Etheridge,* 12 Gratt. 436; *McLachlan v. Wright,* 3 Wend. 348; *Divver v. McLaughlin,* 2 Wend. 596; *Wood v. Lowry,* 17 Wend. 492; *Stoddard v. Butler,* 20 Wend. 507; *Edgell v. Hart,* 13 Barb. 380; *Edgell v. Hart,* 9 N. Y. 213; *Gardner v. McEwen,* 19 N. Y. 123; *Mittnacht v. Kelly,* 3 Keyes, 407; *Russell v. Winne,* 37 N. Y. 591; *Coburn v. Pickering,* 3 N. H. 415; *Ranlett v. Blodgett,* 17 N. H. 298; *Putnam v. Osgood,* 52 N. H. 148; *Horton v. Williams,* 21 Minn. 187; *Place v. Langworthy,* 13 Wis. 629; *Steinart v. Deuster,* 23 Wis. 136; *Bishop v. Warner,* 19 Conn. 460; *Davis v. Ransom,* 18 Ill. 396; *Barnet v. Fergus,* 51 Ill. 352; *Walter v. Wimer,* 24 Mo. 63; *Stanley v. Bunce,* 27 Mo. 269; *Armstrong*

*v. Tuttle,* 34 Mo. 432; *Lodge v. Samuels,* 50 Mo. 204; *Welsh v. Bikey,* 1 Pa. 57; *Hower v. Geesaman,* 17 S. & R. 251; *National Bank v. Ebbert,* 2 Southern Law Review, first series, 175.