J. BENNINGHOFF V. J. K. CUBBISON *et al.*

REPLEVIN — *Demurrer to Evidence.* Where an action in replevin is tried
by the court without a jury, and a demurrer to the evidence is inter-
posed, and there is some evidence tending to establish the issues made
by the pleadings, such demurrer should be overruled. (*Wilson v. Beck*,
44 Kas. 497, and cases there cited, followed.)

*Error from Butler District Court.*

THE material facts are fully stated in the opinion.

*A. L. Redden,* for plaintiff in error.

*Clogston, Hamilton, Fuller & Cubbison,* and *E. C. Ellis,* for
defendants in error.

Opinion by GREEN, C.: This was an action in replevin,
brought by the plaintiff in error against the defendants in
error, in the district court of Butler county, for a stock of
goods kept in a store in the town of Leon, in said county.
The case was tried by the court, and a demurrer to the evi-
dence was sustained, and the plaintiff in error brings the case
here, assigning error. The material facts developed on the
trial were: That on the 16th day of July, 1886, F. W. Beck-
meyer executed a chattel mortgage to J. Benninghoff, the
plaintiff in error, upon a stock of merchandise in Leon, But-
ler county, to secure the payment of $4,260.30. The mort-
gage was filed for record on the following day; and a renewal
affidavit was made and filed on the 7th day of July, 1887.
Sometime in the fall of 1886, the mortgagor made a partial
transfer of the stock of goods to C. L. King. On the 11th
day of December, 1886, King executed a mortgage upon this
same stock of merchandise to the W. B. Grimes Dry Goods
Company, to secure the payment of $800, due December 6th,
1887, subject to the mortgage given by Beckmeyer to Ben-
ninghoff. This mortgage was filed for record on the same
day, and a renewal affidavit was filed on the 23d day of De-
cember, 1887. F. W. Beckmeyer and C. L. King executed

a chattel mortgage upon the same property on the 1st day of June, 1887, to T. K. Hanna, surviving partner of Tootle, Hanna & Co., for $875, payable on the 23d day of May, 1888. This last mortgage was subject to the mortgages given to Benninghoff and the W. B. Grimes Dry Goods Company, and was filed for record on the same day. The stock of goods was re-delivered by King to Beckmeyer, who continued in possession until the 6th day of January, 1888, when there was a conditional sale of the goods to Henry J. Dillon. The following is a copy of the contract for the sale of the stock of goods:

"LEON, KANSAS, January 6, 1888.

"Agreement between F. W. Beckmeyer and Henry J. Dillon. The parties hereto agree as follows: The said Beckmeyer agrees to sell and has sold to said Dillon the stock of general merchandise now in the building known as the Butler Co. Store, subject to an incumbrance of $1,800. And the said Dillon hereby agrees to give said Beckmeyer in exchange or payment for said stock of goods the following-described lands, and execute good and sufficient warranty deeds for the same to J. Benninghoff, the said lands to be free and clear of all incumbrance excepting mortgage of $450, and $150, due the Government, which Dillon agrees to pay when due, and one hundred and sixty acres of land. Description of land: Lots 3 and 4 of S. ½ of N.W. ¼ section 4, township 32, range 22, 160 acres; also the N. ½ of the S.W. ¼; N. ½ of the N.W. ¼ of section 29, township 31, range 23, 160 acres; also the S.E. ¼ of S.E. ¼ section 15; W. ½ of S.W. ¼ of S.W. ¼ of S.W. ¼ section 14, township 32, range 21, 160 acres — all in Clark county, Kansas; the last-named piece or tract being subject to mortgage of $450, and no more, and also execute to said Beckmeyer a second chattel mortgage on stock of goods for the sum of $800 with 12 per cent. interest from date of mortgage, said note and chattel mortgage to run one year from its date; the said Dillon to furnish at his own cost abstract, showing said land clear of all incumbrance as above mentioned, and execute deed as above mentioned; these goods to be delivered into his possession. The said Dillon further agrees not to remove goods from Leon, Kansas, and to pay on said first mortgage to Benninghoff at least $50 per week until the whole is paid, the said mortgage to be given to said Beckmeyer for the $800 to cover all goods which may be added to stock of goods, and also book

account.    The said Dillon hereby represents said land as being nearly all good smooth land, and tillable, with Kansas houses on each quarter; also good wells, and forty acres in cultivation. This trade being made upon the said Dillon's representations of said land, the said Dillon to comply with the said conditions within six days from this date, or sale is null and void.    The said F. W. Beckmeyer to pay all other incumbrance on stock of goods.    The said Dillon further agrees to give another note for $130, with the above $800 mortgage which is to be paid February 5, 1888.        (Signed)    F. W. BECKMEYER.
                                                HENRY J. DILLON."

Accompanying this contract, a bill of sale was executed by Beckmeyer, which recited the fact that the property was free from all incumbrance, except a mortgage of $1,800.    This sale seemed to have been made with the knowledge and consent of the plaintiff in error.    Under this agreement and bill of sale, Dillon took charge of the store on the 8th day of January, and continued in possession until the 18th, when Benninghoff went to Dillon and demanded possession of the stock of merchandise, who refused to deliver the key to him personally, or to turn over the stock, but consented that Beckmeyer might take charge of the store for him and dispose of the goods for Benninghoff's benefit and apply the proceeds of sales in paying off Benninghoff's debt.    The key was handed by Dillon to Beckmeyer, in the presence of Benninghoff, who continued in charge of the store until nine or ten o'clock the next day, when the representatives of the defendants in error came in and demanded possession of the store, and, under threats that he would be arrested, Beckmeyer surrendered the key. Dillon was not present at the time, and Beckmeyer stated that he was holding the stock for Benninghoff.    On the following day the plaintiff commenced this action.    The deeds for the land mentioned in the contract were received by Benninghoff, but on account of some defect, they were returned by mail to the parties who had executed them.

The plaintiff in error insists that the mortgage from Beckmeyer to Benninghoff was valid and comes fairly within the rule heretofore laid down by this court, with reference to mort-

gages upon stocks of merchandise; that upon the trial there was some evidence to support the claim of the plaintiff in error to the title to the property in controversy; and therefore the demurrer to the evidence was improperly sustained. The contention of the defendants in error is, that the evidence offered by the plaintiff below conclusively showed that, at the commencement of this action, the mortgage of the plaintiff in error was without force, and hence the demurrer to the evidence was properly sustained.

We think the demurrer to the evidence should have been overruled. The mortgage under which the plaintiff in error claimed title seemed to have been given in good faith, for a sufficient consideration; and there was some evidence to indicate that there was an unpaid balance of about $1,800 still due the plaintiff in error. All of the mortgages under which title was claimed, by both plaintiff and defendants, were given upon the same stock of goods, and such mortgages have been upheld by this court. (*Frankhouser v. Ellett*, 22 Kas. 127; *Howard v. Rohlfing*, 36 id. 357.) There was an express recitation in the contract between Beckmeyer and Dillon that the sale was made subject to an incumbrance of $1,800, and in that agreement Dillon promised to pay at least $50 a week on the first mortgage to Benninghoff until the whole was paid. As we view the testimony, there was evidence to show that when Dillon delivered the key of the store to Beckmeyer, it was for the benefit of Benninghoff. We are not satisfied that the attempted sale by Beckmeyer to Dillon operated as a release of the Benninghoff mortgage. The deeds for the land were executed, but afterward returned. If it did not, the question as to who was in possession of the store when the defendants below obtained possession through Beckmeyer, is not very material. If the first mortgage was not discharged by the making of the contract between Dillon and Beckmeyer, the plaintiff in error had the undoubted right to maintain his action.

We do not care to consider the evidence. That of the plaintiff alone is here, and all that we can now say is, that the facts

adduced before the trial court seemed to show a cause of action in favor of the plaintiff in error.     Under the well-settled rule of this court, unless there has been a total failure upon the part of the plaintiff to prove a cause of action, or some material fact in issue, the demurrer should have been overruled. (*Wilson v. Beck,* 44 Kas. 497; *K. C. Ft. S. & G. Rld. Co. v. Cravens,* 43 id. 650; *Gardner v. King,* 37 id. 671; *Merket v. Smith,* 33 id. 66; *Wolf v. Washer,* 32 id. 533; *Brown v. Railroad Co.,* 31 id. 1.)

We recommend a reversal of the judgment.

By the Court: It is so ordered.

All the Justices concurring.