# SARGEANT VS. SOLBERG.

CHATTEL MORTGAGE: *Identification of property by parol evidence—Delivery by filing—Proof of bona fides—Chap.* 458, *Laws of* 1864.

1. A mortgage was executed on "fifty cords of wood, piled upon lot 1, block 33," etc. In an action between the mortgagee and one claiming under a subsequent judgment, it appearing that there was other wood piled on the same lot, *held*, that the mortgaged premises might be identified by parol evidence.

2. An attorney to whom money was sent to be invested at his discretion, applied it to his own use, executing and filing a chattel mortgage to his principal as security. In an action by the principal against a third party, to recover possession of the mortgaged property, *held*, that there was a valid delivery of the mortgage. *Welsh v. Sackett*, 12 Wis., 243, distinguished.

3. The evidence in this case *held* sufficient to show the *bona fides* of a chattel mortgage, where the property remained in the mortgagor's possession. Chap. 458, Laws of 1864.

APPEAL from the Circuit Court for *Columbia* County.

Replevin, for fifty cords of wood. Plaintiff claimed under a chattel mortgage from one Barlow, filed February 9, 1864; defendant as sheriff, under an execution upon a judgment against Barlow, docketed April 13, 1864, which execution was levied upon said wood June 13, 1864. The property is described in the mortgage as "fifty cords of wood, piled upon lot No. 1, block No. 33, in the city of La Crosse and state of Wisconsin;" and the condition of the defeasance is, the payment of $200, with interest, according to the conditions of a note made by Barlow, dated February 8, 1864, and then held by *Sargeant;* and there is a clause authorizing *Sargeant* to take possession if at any time he should deem the property insecure. At the time of the execution of the mortgage, and also at the time of levy made by defendant, said property was in Barlow's possession, piled upon the north side of the lot above mentioned, and there were on the same

lot thirty-five other cords of wood owned by Barlow and in his possession, viz., a pile of twenty-five cords in the middle of the lot, and one of ten cords on the south side; and on the 13th of June, 1865, there remained of the pile in the middle of the lot, ten cords which had not been used by Barlow. The pile on the north side, replevied by plaintiff, contained, by actual measurement, only 47 cords. The judgment upon which defendant seized the property, was on a note of Barlow's for $100, with interest; and when the chattel mortgage was given to plaintiff, about $170 was due on the note, and Barlow knew that it was in the hands of attorneys for collection. Plaintiff was in Tennessee, in the federal army, from January to July, 1864, and knew nothing of the execution of the note and chattel mortgage to himself until July 20, 1864, when he returned to La Crosse on a furlough. He had, however, sent to Barlow, from Saulsbury, Tenn., $200 in December, 1863, requesting the latter to invest the money for him in any manner he might think best, and adding: "I am not particular what use you put the money to, so that I could get it when I come back." This letter was read in evidence against defendant's objection. Barlow deposited the money specially in bank in his own name, until after he executed the note and chattel mortgage, and filed the mortgage, when he drew out and used the money, no part of which has been repaid. At the time he drew the note and mortgage, he delivered them to one Van Steenwyck (who, however, was not the plaintiff's agent), and caused the mortgage to be filed in the city clerk's office. In May, 1864, he caused a letter to be written to plaintiff, informing him that he had used the money and given said mortgage; but plaintiff never received the letter. When the defendant made his levy, he was informed by Barlow that the wood in question was mortgaged to plaintiff. Barlow testified, against defendant's objection,

that there were fifty cords piled on the north side of said lot 1, and these were the fifty cords described in the mortgage; and that his object in executing the note and mortgage was to secure the repayment of said $200 to plaintiff. The plaintiff testified that he deemed the debt insecure when he returned in July, 1864; and he then caused this suit to be brought.

The circuit court found the facts substantially as above stated; held the mortgage valid; and rendered judgment for the plaintiff; from which the defendant appealed.

*Montgomery, Wing & Gage,* for appellant:

1. If the description in the mortgage was so uncertain that it could not be determined on its face what property was intended to be mortgaged, it was void. But when there were two piles of wood on the same lot, both belonging to the mortgagor, either of which the mortgage, by its terms, might cover, there being no other claim or lien on either of them, and an execution was levied on one of the piles, the mortgage should be held to cover the other; otherwise a mortgage on fifty cords would protect a thousand cords in different piles on the same lot. 2. There was no delivery of the mortgage before the levy. *Welsh v. Sackett,* 12 Wis., 243. There can be no delivery without an acceptance by the grantee (6 Barb., 98, 103; 20 id., 332; 12 Johns., 418), and plaintiff did not accept before his return from the army, after the levy was made. Barlow could not, under authority of plaintiff's letter, invest money as plaintiff's agent by loaning it to himself, nor, as such agent, accept a mortgage executed by himself, and thus create a lien, as against his creditors, on his own property. An agent cannot act for his principal in matters where he has an adverse interest in himself. Edwards on Bills and Notes, 407, note; *Bentley v. Columbia Ins. Co.,* 17 N. Y., 423; 20 How. (U. S.), 345; *Claflin v. F. & C. Bank,* 24 How. Pr. R., 11; *Stone v. Hayes,* 3 Denio, 575;

Sargeant vs. Solberg.

Story on Agency, §§ 21–110. 3. Fraud being alleged, the plaintiff was bound to show affirmatively the *bona fides* of the mortgage. Laws of 1864, chap. 458. 4. The objections to testimony should have been sustained. Barlow's intentions were not to be determined by his statements ·as a witness, but by the facts and circumstances of the case. 1 Hill, 347. The plaintiff's letter was a mere declaration in his own favor; and it did not authorize Barlow to loan the money to himself, and accept security from himself as plaintiff's agent.

*Hugh Cameron*, for respondent.

COLE, J. We think there was no error in admitting parol testimony to identify the wood embraced in the mortgage. It is contended that the wood should have been described in such a manner that a mere inspection of the ·mortgage, without reference to any other evidence or source of information, would enable one to identify the property mortgaged; and that unless the property is thus described, the instrument is void for uncertainty. It would undoubtedly be a very desirable rule, if it were possible, to describe the property mortgaged so that one could ascertain from the face of the instrument itself what property was intended to be embraced therein. But it is evident that resort must frequently be had to parol evidence to apply the description in the mortgage. It is not readily perceived how the description of the wood in this case could have been more certain and specific. And as there were other piles of wood on the same lot, it was necessary to resort to extrinsic proof to identify the property. Under the circumstances, we suppose the evidence was admissible for that purpose. *Harding v. Coburn*, 12 Met., 333; *The Mil. & Minn. R. R. Co. v. Mil. & West. R. R. Co.*, 20 Wis., 174, and authorities referred to on page 187.

Again, it is insisted that the facts in the case show that there was no valid delivery of the mortgage prior to the seizure of the property on the execution; and that the case is ruled by the decision in *Welch v. Sackett*, 12 Wis., 243. The cases, however, are readily distinguishable. In *Welch v. Sackett*, the mortgagor executed the chattel mortgages in the absence and without the knowledge of the mortgagees, and handed them to his own attorney, with a declaration that he delivered them for the use of the mortgagees. And it was held that the title to the property mortgaged did not vest in the mortgagees, so as to defeat an attachment levied upon the same property, by a creditor of the mortgagor, after the delivery of the mortgages to the attorney and prior to the time when the mortgagees received notice of the execution of the instruments, and accepted them. But here, we think, the evidence shows that Barlow was authorized by the mortgagee to accept the mortgage and file it in the clerk's office for him. For, in the letter which *Sargeant* sent to Barlow with the $200, he says: "Would you be kind enough to invest the same for me in any manner you think best? If you will do so, you will confer a favor. I am not particular what use you put the money to, so that I could get it when I come back." Beyond all controversy, this letter gives Barlow full authority to invest the $200 in any manner the agent might think best, so that the investment was safe and *Sargeant* could receive the money on his return from the war. Now suppose Barlow had loaned the money to some third party; can there be a doubt upon the question, whether he was fully authorized to accept for *Sargeant* any chattel mortgage which might be given to secure its repayment? It seems to us that there could not possibly be any doubt upon that point. Being fully authorized to loan the money, he had the right to take any security for its repayment on behalf of his principal. And this circum-

stance distinguishes the case from that of *Welch v. Sackett.* There the instruments were handed to the attorney of the mortgagor, who was not authorized to act for the mortgagees in accepting a delivery of them. But could the agent apply the money to his own use, and execute and file the mortgage for the use of the principal? It is assumed that he could not do this, and that it was a clear violation of his duty thus to appropriate the money. However the rule might be if the principal were dissatisfied with the use which had been made of his money, and were endeavoring to repudiate the transaction, clearly the mortgage is only void at his election. If he chooses to ratify what has been done by his agent, and treats the mortgage as valid, upon what principle of law or public policy can strangers interfere and claim that the mortgage is void because the agent made an unauthorized use of the money? Here the mortgagee is satisfied with the security—has fully ratified and approved the use made of his money, and seeks to have the benefit of the security. And it is objected by some third party, that he cannot avail himself of the chattel mortgage, because it was incompatible with the duties of Barlow to make the use of the money he did. It seems to us that if the principal is satisfied with the loan and security, others have no right to complain. They cannot avoid the chattel mortgage made by the agent for the benefit of the principal, even if it be conceded that, under the circumstances, the principal might have treated the transaction as unauthorized.

It is further insisted that the plaintiff was bound to show affirmatively the *bona fides* of the transaction, claiming the property under a chattel mortgage. This we think he did do, so as fully to meet the requirements of chapter 458, Laws of 1864.

*By the Court.*—The judgment of the circuit court is affirmed.

On motion for a rehearing, appellant's counsel, among other things, insisted that Barlow, as plaintiff's agent to loan money, could not make a loan to himself and accept from himself security therefor (citing *Claflin v. F. & C. Bank,* 24 How. Pr. R., 1, 15; *Dobson v. Racey,* 3 Sandf. Ch., 60; *N. Y. Central Ins. Co. v. National Protection Ins. Co.,* 14 N. Y., 85–91); that the mortgage was therefore not valid until accepted by the plaintiff, after the levy made; and that such acceptance would not relate back to the execution and filing of the instrument, so as to affect intervening rights. *Welsh v. Sackett,* 12 Wis., 243; *Culver v. Ashley,* 1 Am. L. C. (2d ed.), 592, and authorities there cited.    2. If Barlow was plaintiff's general agent, he could withdraw the mortgage from the files at any time.    He could consider it delivered or not at his option.    In some of the cases referred to in *Welsh v. Sackett,* it was claimed that a contract ought to be held valid where the maker had, by delivery *to a third person,* placed it beyond his control, or power to revoke; but this court held that position untenable.    The delivery here was still more defective.    Again, if Barlow, as plaintiff's agent, could accept the mortgage, by parity of reasoning his possession of the mortgaged property was the possession of the principal, and it was not necessary to file the mortgage at all.—Counsel further contended that plaintiff's letter, under which Barlow claimed the powers of an agent, must be strictly interpreted (Story on Agency, §§ 68, 69; 1 Am. L. C., 547, 550), and that so interpreted it did not authorize Barlow to use the money for his own purposes, nor even to loan it and accept securities from other parties, but only to purchase some property which would be a safe investment.    It shows a *personal* trust, which Barlow did not agree to accept or act upon; and if he converted the money to his own use, and so became liable to the plaintiff therefor, without any previous agreement to give security,

the mortgage was void under the· decision in *Welsh v. Sackett.*

Rehearing denied.