ALBRIGHT, Respondent, vs. ALBRIGHT and another, Appellants.

*January 12 — January 31, 1888.*

*(1) Estates of decedents: Widow's election not to take under will must be made within one year. (2) Deed: Delivery for grantee after death of grantor. (3) Destruction: Consent: Parol evidence: Estoppel. (4) Conveyance by husband to wife: Homestead: Consideration.*

1. Notice of the widow's election, under secs. 2171, 2172, R. S., to take the provision made for her by law instead of that made by her husband's will, must be filed within one year after the death of

the husband; and such time is not extended by a stay of proceedings during the pendency of an appeal from an order refusing to admit the will to probate.

2. Where a deed is duly executed and delivered by the grantor to a depositary in the presence of the grantee, without any reservation of control, and with the intention and understanding that such depositary is to retain the custody thereof until the grantor's death and then deliver the same to the grantee, it is the grantor's deed *in præsenti* from the time of such deposit, and the depositary thereby becomes the trustee of the grantee.

3. Subsequent destruction by the grantor of a deed so executed and delivered will not divest the title of the grantee. And, where the parties are husband and wife, the reluctant acquiescence by the wife in the destruction of the deed to her, the husband being in a state of great excitement and making threats as to what he will do if she does not consent, and the wife being broken down and exhausted, will not estop her from proving the contents of such deed by parol.

4. The right of the wife to her husband's homestead after his death is *held* in this case to have furnished a meritorious consideration for the conveyance of such homestead by him to her by way of settlement, there being no children, and no one being deprived thereby of any existing claim.

APPEAL from the Circuit Court for *Brown* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action of ejectment. Both parties claim title from Jacob Albright, deceased. The plaintiff claims one sixth of two thirds of the forty acres of land described, under the will of the deceased. The defendant *Joanna Albright* claims the whole of said forty acres of land, as constituting the homestead of the deceased, as his widow, and also as grantee prior to the making of the will.

Upon the trial, the court found, in effect, as matters of fact: (1) that September 1, 1880, said Jacob was the owner in fee of the fifty-six acres described, occupying the south forty thereof with the said *Joanna*, then his wife, living with him thereon as a homestead; and that she, as his

widow, continued to occupy the same; (2) that September 1, 1880, said Jacob executed a deed, duly witnessed and acknowledged in due form of law, of said homestead forty to his said wife *Joanna*, and at the same time left said deed with John E. Thomas, of Sheboygan Falls, (12) with the intention that it should be delivered to the said *Joanna* after the death of said Jacob; (13, 14) that said *Joanna* was present when said Jacob so delivered said deed to said Thomas, and that said Jacob then made no reservation of any control over it whatever; (15) that said deed was to be held by said Thomas for both Jacob and *Joanna* during the life of the former, and after his death to be delivered to the said *Joanna;* (3, 16, 17,) that November 7, 1881, the said deed was obtained by the said Jacob from the said Thomas, and in the presence of said *Joanna* was destroyed by the said Jacob, she, though reluctantly, consenting thereto; that it was understood at the time of such destruction, by the said Jacob and the said *Joanna,* and such was his intention, that such destruction left matters the same as if no deed had ever been made; (4) that November 11, 1881, the said Jacob made and published his last will and testament, whereby, after certain specific bequests of personal property to said *Joanna,* he gave her one third of all his property, real and personal, not specifying of what it consisted, and the remaining two thirds to his six brothers and sisters in equal shares; he having no children — the plaintiff being one of said brothers; (5) that Jacob died June 25, 1882, in, and being a resident of, Sheboygan county; (6) that October 31, 1882, the said will, upon the hearing thereof, was denied probate by the county court; (7) that December 2, 1882, the said brothers and sisters filed notice of appeal therefrom to the circuit court, with a bond to stay proceedings, which were thereupon certified to the circuit court accordingly; (8) that September 28, 1883, judgment was rendered in said circuit court admitting said will to probate, and October 16, 1883, the

same was certified back to the county court pursuant to said judgment; (18) that October 23, 1883, the said *Joanna* filed with said county court notice of her election as such widow to take the provision made for her by law, instead of under the will; (9) that subsequently letters testamentary thereupon were issued to Hiram Ashcraft, as executor of said will, and said executor thereupon, January 5, 1884, filed an inventory of said estate, including therein said premises; (10) that September 18, 1884, the said *Joanna* filed her petition in said county court, and therein claimed said homestead forty as her property at the time of the death of said Jacob, and asked that it be stricken from the inventory of said estate; (11) that, after due notice to all devisees and said executor, a hearing was had upon said last-mentioned petition in October, 1884, at which said devisees and executor were represented by attorneys, and, after such hearing, it was found and adjudged by said county court that said homestead forty had been conveyed by said Jacob during his life-time to said *Joanna*, and was her property at the time of his death, and the same was accordingly ordered stricken from said inventory; and that no appeal had been taken from said order, and that the time for such appeal had expired; (19) that the defendants were in possession of said homestead forty at the time of the commencement of this action, as alleged in the complaint; (20) that the plaintiff, under the will, became the owner and was the owner in fee of an undivided one-sixth of an undivided two-thirds of said forty acres, as alleged in the complaint; (21) that no damages to the plaintiff were proven.

And as conclusions of law the court found: (1) That *Joanna* was not entitled to any relief under her counter-claim; (2) that the plaintiff was entitled to recover the possession of the premises, as demanded in the complaint, together with the costs and disbursements of this action; (3) that he have judgment accordingly; and the same was,

therefore, so ordered and entered.    From that judgment in favor of the plaintiff the defendants appeal.

For the appellants there was a brief by *Seaman & Williams*, and oral argument by *Mr. Seaman*.

*Geo. W. Foster*, for the respondent.

CASSODAY, J.   1. The widow successfully resisted the probate of the will in the county court.    The brothers and sisters gave the requisite bond, and appealed from such adjudication to the circuit court, where the will was admitted to probate.    Subsequently the widow elected not to take under the will but under the statute; but this was not done until more than one year after the testator's death.    The statute declares, in effect, that such widow shall be deemed to have elected to take the devise or other provision made for her in the will of her husband, " unless, within *one year after the death* of her husband, she file in the court having jurisdiction of the settlement of his estate, notice in writing that she elects to take the provision made for her by law, instead of such jointure, devise, or other provision."    Secs. 2171, 2172, R. S.    It is claimed that as "all further proceedings in pursuance of the act appealed from," were stayed in the county court pending such appeal (sec. 4036, R. S.), the time during such stay should be deducted from the year; but the statute makes no such exception, and we are bound by the statute.    True, the statute provides that when the commencement of an action shall be stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition shall not be part of the time limited for the commencement of the action.    Sec. 4236, R. S.    But the case presented does not come within the provisions of this section.    It is distinguishable from *Zaegel v. Kuster*, 51 Wis. 31, cited by counsel.    Neither the contest of the will, nor the stay of proceedings pending the appeal to the circuit court, prevented, or in any way in-

terfered with, the making of such election. The election must be made by the widow " within one year after the death of her husband." Sec. 2172, R. S. No deduction from the time is provided for in case the validity of the will is contested; nor even where the will is lost, and its existence unknown to the widow until after the expiration of the year. The statute may be unwise, if not unjust to the widow, but it is nevertheless imperative upon the courts.

2. The authorities certainly go to the extent of sustaining the proposition that where a deed is duly executed and delivered by the grantor to a depositary in the presence of the grantee, and without any reservation of control, with the intention and understanding that such depositary is to retain the custody thereof until the grantor's death, and then deliver the same to the grantee, it is such grantor's deed *in præsenti* from the time of such deposit, and such depositary thereby becomes the trustee of the grantee. *Foster v. Mansfield*, 3 Met. 412; *Mather v. Corliss*, 103 Mass. 568; *Regan v. Howe*, 121 Mass. 424; *Hathaway v. Payne*, 34 N. Y. 92; *Ball v. Foreman*, 37 Ohio St. 139, 63 Am. Dec. notes 243, 244. Some of these cases have been approved by this court. *Prutsman v. Baker*, 30 Wis. 651; *Campbell v. Thomas*, 42 Wis. 437. Here the delivery was made by the grantor to the depositary with such intention and understanding, and hence the case comes within the rule stated. It is conceded that the title would have passed immediately upon such deposit being made, had the grantee been a stranger instead of the wife of the grantor.

But it is claimed that a deed directly from a husband to his wife is inoperative in law and conveys no legal estate. Such a deed, however, is admitted to be good and enforceable in equity, under the decisions of this court, when based upon a valuable consideration. *Putnam v. Bicknell*, 18 Wis. 333; *Hannan v. Oxley*, 23 Wis. 519. This last case was decided on the theory that the only consideration for the deed

was money which the husband had long before received from his wife, and at a time when her personal property in his possession became his property absolutely in law. Nevertheless' it was held that, although the money had become the property of the husband, and beyond any reclamation by the wife, yet that it operated as "a meritorious consideration in the eye of a court of equity, sufficient to sustain the deed" voluntarily given. In that case Mr. Justice PAINE strongly intimates, if the court did not hold, that such voluntary deed "in consideration of natural love and affection" merely would be sustained. In *Crooks v. Crooks*, 34 Ohio St. 610, the deed from the husband to the wife was in consideration of natural love and affection and to make a suitable provision for her, and was delivered to a depositary as here; and it was said in the opinion of the court: "In such cases, it is sufficient that the consideration be a meritorious one; as, for instance, where the conveyance is in the nature of a settlement, and was intended to be a reasonable provision for the support of the wife. . . . Upon such a consideration, however, the conveyance will not be perfected by a court of equity to the injury of creditors, or to the prejudice of children *for whom no provision has been made*." It is further said that "a child who complains against such settlement on the wife must show that he or she has not been provided for." Among the authorities cited in that case which sustain the proposition that a reasonable provision for the support of the wife may be made in the nature of a settlement by a conveyance to the wife, are *Hunt v. Johnson*, 44 N. Y. 27; *Sims v. Rickets*, 35 Ind. 181; *Wilder v. Brooks*, 10 Minn. 50.

Other courts have held the same way. Thus in *Jones v. Clifton*, 101 U. S. 228, where the husband conveyed directly to the wife, Mr. Justice FIELD, speaking for the court, said: "The only question that can properly be asked is, Does such a disposition of the property deprive others of any

existing claim to it? If it does not, no one can complain if the transfer be made matter of public record and not be designed as a scheme to defraud future creditors; and it cannot make any difference through what channels the property passes to the party to be benefited or to his or her trustee,— whether it be by direct conveyance from the husband or through the intervention of others. The technical reasons of the common law, arising from the unity of husband and wife, which would prevent a direct conveyance of the property from him to her for a valuable consideration, as upon a contract or purchase, have long since ceased to operate in the case of a voluntary transfer of property *as a settlement upon her*." In *Thompson v. Allen*, 103 Pa. St. 44, it was held that "a conveyance of real estate by a husband directly to his wife by way of gift, if not in fraud of the husband's creditors, will be sustained on equitable principles."

In the case at bar, the husband conveyed to the wife nothing but the homestead. It was occupied by them at the time. They had been married several years. They had no issue. The husband had no child by any other marriage. His nearest of kin were his brothers and sisters. Had he died without having made any disposition of his property, it would all, real and personal, have passed to his widow. R. S. sec. 2270, subd. 2; sec. 2271, subd. 1; sec. 3935. The homestead would have so passed even as against judgment and general creditors of the deceased. *Ibid.* He at no time could make any valid "mortgage or other alienation" to any other person "without the signature of his wife to the same." Sec. 2203. As yet, the legislature have not thus disabled the husband from disposing of his homestead by will. On the contrary, the statutes impliedly recognize his ability to "lawfully devise the same." Sec. 2271. And yet if the homestead be devised to another, and provision be made for the wife in her husband's will, she may, by

election within the year, defeat such disposition of the homestead. Secs. 2170, 2172, R. S.; *Leach v. Leach*, 65 Wis. 284. Here provision for the wife was made in the will, and she had such election, but failed to exercise it. What would be her rights in that regard where no provision is made for her in such will, may be difficult to tell. Whether, in such case, further legislation is necessary in order to properly protect the wife and widow, is a matter addressed to the wisdom of another department of the state government. The general scheme of the statutes is to give the wife and widow a right to the homestead, even as against the expressed wish and disposition of the same by the husband. This right is valid in law as against his general and judgment creditors. It is even available as a valid legal right against the husband's own children, much more as against his more remote kinsmen — brothers and sisters, as here.

Such right to the homestead, in the case at bar, furnished, in our judgment, a meritorious consideration for the settlement of the same upon her by way of the deed to her from her husband, and by him delivered to the depositary as stated. Confessedly, it was not made to defeat or defraud any one. It gave her less than she would have received had no disposition of it been made by the husband. To answer the question put by Mr. Justice FIELD, it deprived no one of any existing claim. The only persons making claim to it are doing so in derogation of the general purpose of the statutes. They are mere volunteers; they have no equitable right to the homestead as against her. She had, at the time of making the deed, not only a superior equity, but a legal right as against them. We must hold that by the delivery of the deed to the depositary, the husband vested in her the title *in præsenti*, subject to his occupancy of the same with her during his life. *Ferguson v. Mason*, 60 Wis. 377.

3. This being so, it is very obvious that the mere destruc-

tion of the deed did not divest the title which she thus acquired; much less did it revest such title in the husband. *Rogers v. Rogers*, 53 Wis. 36, and cases there cited; *Tolar v. Tolar*, 18 Am. Dec. 598. The only effect it could have would be to estop the wife from giving parol evidence of her title. *Wilke v. Wilke*, 28 Wis. 296; *Hilmert v. Christian*, 29 Wis. 104; *Wheeler v. Single*, 62 Wis. 380; *Lampe v. Kennedy*, 56 Wis. 253, 254. But to have that effect she, as the grantee, must have consented to such destruction. Moreover, such consent must have been voluntarily given and clearly proved. *Le Saulnier v. Loew*, 53 Wis. 207. If not so given or not so proved,— if it was procured by fraud, duress, or undue influence,— it should not be allowed to work such estoppel. *Parker v. Kane*, 4 Wis. 1, 65 Am. Dec. 283, and notes. Here such consent of the wife was certainly not freely and voluntarily given. She, at most, reluctantly acquiesced, and then only when it became manifest that further objection would, at least, endanger the subsequent peace of the household. The husband was at the time "in a state of great excitement," and made threats of what he would do if his wife did not consent to the surrender and destruction of the deed. He was in a bad state of mind, and his health was impaired. In taking care of him, his wife was broken down and exhausted. Not only their condition, but his relation to her as her husband, necessarily gave him a commanding influence over her. They could not contend on equal terms. She was at a disadvantage. Her acquiescence, under the circumstances, must be regarded as having been procured by undue influence, if not by coercion.

*By the Court.* — The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment against the plaintiff and in favor of the widow, establishing her title to the homestead, and for further proceedings in accordance with this opinion.