# CHARLESTON.

LANG *et al. v.* SMITH *et al.*

(DENT, JUDGE, absent.)

Submitted January 24, 1893.—Decided April 1, 1893.

1. DEED--DELIVERY.

   A case in which a deed was executed and acknowledged, ready for delivery, but was not delivered by anything then said or done, but was laid away in decedent's drawer where he kept his papers, together with his will executed at the same time. After the grantor's death the supposed deed and will were found in his drawer. *Held*, such paper writing is not his deed, never having been delivered.

2. DEED—DELIVERY.

   So long as a deed is within the control, and subject to the dominion and authority of the grantor, there is no delivery, without which there can be no deed.

3. DEED—DELIVERY.

   Of such a deed there can be no valid delivery after the grantor's death.

4. DECREE.

   A decree must be justified by the pleadings as well as by the proofs.

5.

   A case in which these rules are discussed and applied ; also the competency of certain testimony relating to transactions and communications had with a deceased person.

DENT & DENT for appellees, cited 6 W. Va. 121 ; 21 W. Va. 233 ; 28 W. Va. 715.

P. J. CROGAN for appellants.

I.—*Incompetency of Mrs. Smith*—Code, c. 130, s. 23 ; 10 W. Va. 59 ; 11 W. Va. 122.

II.—*Competency of defendants' witness.*—1 Greenl. Ev., §§ 171, 174 ; 32 W. Va. 119.

III.—*Burden of proof.*—6 W. Va. 110.

IV.—*Delivery and intention.*—6 Gill & J. Md. 250 ; 3 Mo. 67 ; 1 N. J. Eq. 458 ; 1 Edw. N. Y. 497 ; 5 Hump. 411 ; 17 Ala. 89 ; 39 Ill. 413 ; 8 Ind. 364 ; 6 Minn. 64 ; 19

Pa. 194; 9 Mass. 307; 15 Wend. N. Y. 545; 10 Ohio
273; 2 Min. Inst. 656–7; 1 Blacks. Bk. 2, 306, note 8;
(Wis.) 36 N. W. Rep. 254; 36 N. W. Rep. 626; 15 N.
W. Rep. 678; 10 S. W. Rep. 836; 21 Pac. Rep. 948;
21 N. E. Rep. 401; 6 W. Va. 121; 2 Greenl. Ev. 297;
3 Wash. Real Prop. 300; 1 Devl. Deeds, §§260–2–9.

HOLT, JUDGE:

This is a suit in equity brought in October, 1889, in the
Circuit Court of Preston county, by Susan C. Lang and
others against Worth Smith, B. B. Smith, Charles P.
Smith, and W. F. Smith, to set aside as invalid a certain
deed made by the father, John M. Smith, to his two sons
Worth Smith and B. B. Smith, for a certain tract of land
of about one hundred and seventy two acres, and for par-
tition of the same among his heirs. The Circuit Court, by
decree of September 13, 1892, among other things, ad-
judged that the said paper-writing dated March 24, 1884,
purporting to be a deed from said John M. Smith and his
wife, Harriett E. Smith, to the said B. B. Smith and Worth
Smith, conveying to them said tract of land, and recorded
in the clerk's office of the County Court of Preston county,
in Deed Book No. 55, p. 327, was and is wholly invalid,
null and void; that said pretended deed be and the same
is hereby cancelled and annulled; and that plaintiff Harriet
E. Smith is the owner in fee simple of said land under the
will of her husband and entitled to the possession thereof;
and awarded her a writ of possession to cause her to have
possession of said land. To this decree defendants Worth
Smith and B. B. Smith obtained this appeal.

From the pleadings and evidence it appears that on the
14th day of June, 1884, John M. Smith departed this life,
leaving the plaintiffs, Susan C. Lang, Indiana A. Baker,
Rose Ella Silcott, his daughters, all married, and his sons,
the defendants, Worth Smith, B. B. Smith, Charles P.
Smith, and W. F. Smith, as his children and heirs at law,
and plaintiff Harriet E. Smith, his widow. The bill alleges
that the decedent left no will as to his real estate, but willed
all his personal estate, after payment of debts and funeral
expenses, to his widow, the plaintiff Harriet E. Smith,

whom he appointed executrix; that there are now no debts; that at the time of his death decedent was seised in fee of about one hundred and seventy two acres of land, which descended to his said heirs subject to the widow's dower, except to defendant Charles P. Smith, who plaintiffs charge, received his full share of decedent's estate by way of advancements made during decedent's lifetime; and that said land is susceptible of partition in kind.

Plaintiffs further charge that, after the death of said John M. Smith, a paper, purporting to be a deed for the land aforesaid to defendants Worth Smith and B. B. Smith, was found among the private papers of said decedent, and was unlawfully taken possession of by said defendants, and placed on the records of Preston county, and by virtue of which they unlawfully took possession of said land, and have been unlawfully holding said land ever since, as against the plaintiffs.

Plaintiffs insist and charge that said supposed paper was never executed by the said John M. Smith as and for a deed, and was never delivered or intended to be delivered by him to said supposed grantees therein, but was fraudulently seized by them after his death, and placed on record as aforesaid, contrary to the will, wish, or deed of said decedent. Plaintiffs therefore pray that said alleged deed may be held invalid to pass the title; that the said land may be partitioned among plaintiffs and defendants entitled thereto; that Harriet E. Smith's dower therein may be assigned; that Worth Smith and B. B. Smith may be required to account for the rents and profits from the time they took possession; and for general relief.

Defendant W. F. Smith appeared, and demurred to the bill, his demurrer was overruled, a rule to answer was waived by him, and bill taken for confessed. The bill was also taken for confessed as to defendant Charles P. Smith.

The defendants Worth Smith and B. B. Smith filed their joint answer. They admit that the decedent, John M. Smith, on the 24th March, 1884, made his last will as alleged, which has been duly proved and admitted to record. They alleged that at the same date and during his last

illness he executed to defendants said deed for said land; that it was duly and properly signed, sealed, and acknowledged by said decedent in the presence of witnesses, and also by the plaintiff Harriet E. Smith, the wife of the decedent; and that said deed was intended to be delivered to them, and was delivered to them· in the lifetime of the decedent. They deny that any of said heirs have any interest in said land, or that they unlawfully obtained possession of said deed, or that they are unlawfully in possession of the land. They further say that on said 24th March, 1884, the decedent, John M. Smith, made a final disposition of all the property he owned at that time, as shown by said will, to his wife, said deed to them, and a deed then made to Susan C. Smith, thus providing as he intended for his entire family ; that this was the last business act of his life, having departed this life in a few months thereafter ; that since the death of John M. Smith, his widow, their mother, plaintiff Harriet E. Smith, has recieved from them her full share and more of the rents and profits of said land as her dower, as provided for in said deed, and that she is entitled to no other dower; and that said deed was duly executed by John M. Smith, was intended to be delivered to them and to pass to them the title thereto, and was in fact delivered to them in decedent's lifetime.

The will and deeds dated March 24, 1884, together with the certificates of acknowledgment and of recordation, are as follows :

"This deed, made this 24th day of March, 1884, between John M. Smith and Harriet E. Smith, his wife, grantors, of the first part, and Worth Smith and B. B. Smith, grantees, all of Preston county, West Virginia, witnesseth : That the said John M. Smith and Harriet E. Smith, his wife, for the natural love and affection which they have unto the said Worth and B. B. Smith, by these presents, does give, grant, alien, convey, and confirm unto the said Worth and B. B. Smith, their heirs and assigns, forever, the hereinafter described real estate, situated in Lyon district, Preston county, West Virginia, being the same land deeded to me by Samuel Chorpenning by deed

dated October 1, 1869, bounded as follows: Beginning at at a pile of stones at the fence, and running west 176 poles to a water beech and dogwood; S. 30 poles; W. 12 poles; S. 43 W. 60 poles; S. 33 W. 18 poles; S. 52 E. 90 poles to a poplar; E. 164 poles to Jenkins' and Sharp's corner; N. 11-2 E. 10 poles to a hickory corner; thence running a straight line, supposed to be about 140 poles, to the beginning —containing 192 acres; except 16 acres I heretofore deed to Susan Smith, by deed dated January 23, 1880, and 10 acres off the west end of said lands and running parallel with the east side of the said Susan Smith's 16 acres, which I this day have made my son Charles P. Smith a deed—to have and to hold the same, with all the appurtenances and privileges thereto belonging, except as hereinafter: Harriet E. Smith retains her dower interest to said lands, and at her death this provision above shall be null and void; said Worth and B. B. Smith shall pay Rosalie Silcot, each, $50 when they come into possession of the aforesaid realty.

"In witness whereof, the parties of the first part have hereto set their hands and seals this, the day and year above written.

<div align="center">

"J. M. SMITH,    [SEAL.]

her
"HARRIET E. SMITH, X [SEAL.]
mark

"Teste: J. M. TURNLEY."
</div>

"County of Preston, State of West Virginia.

"In said county personally appeared before me, James McGee, a justice in said county, John M. Smith, whose name is signed to the above deed bearing date March 24, 1884, and acknowledged the same to be his act and deed; and at the same time and place personally appeared Harriet E. Smith, whose name is also signed to said writing, who, being examined privately and apart from her husband and having it fully explained to her, acknowledges the same to be her act and deed, and declared that she had willingly executed the same and does not wish to retract it.

"Given under my hand this 24th day of March, 1884.

<div align="center">

"JAMES McGEE, J. P."
</div>

"WEST VIRGINIA, ss.:

"On the 14th day of July, 1884, the foregoing writing,

with certificates thereto, was produced to me in my office, and therein admitted to record.

<div style="text-align:right">"Teste : J. Ami Martin,</div>
<div style="text-align:right">Clerk County Court of Preston County.</div>

"A copy from the record.

<div style="text-align:right">"Teste : J. Ami Martin, Clerk."</div>

Will of John M. Smith :

"In the name of God, Amen. · I, John M. Smith, of the county of Preston, in the state of West Virginia, being weak of body and of sound mind and memory, but considering the uncertainty of this transitory life, do make and publish this, my last will and testament, in manner and form as follows : It is my will, and I do order, that all my just debts and funeral expenses be duly paid and satisfied out of my personal property after my decease. I give and bequeath unto my dear wife, Harriet E. Smith, all remaining property, after my debts are paid as above, and to W. F. Smith five dollars, Susan C. Lang, five dollars, and Indiana A. Baker, five dollars. And, lastly, I nominate, constitute and apppoint my said wife to be the executor of this my last will, hereby revoking all other wills by me made, and declare this and no other to be my last will and testament.

"In witness whereof I have hereunto set my hand and seal this 24th day of March, 1884.

<div style="text-align:right">"J. M. Smith, [Seal.]</div>

"Witnesses : D. J. Gibson,
<div style="margin-left:6em">"John C. Howell.</div>
<div style="margin-left:6em">"J. M. Turnley."</div>

"State of West Virginia, county of Preston. In the clerk's office of the county court of said county (in vacation)—ss :

"This day a paper writing purporting to be the last will and testament of John M. Smith, deceased, was produced by Charles P. Smith, and offered for probate. Whereupon it is ordered, that proper process do issue against all the parties interested in said probate of will, and made returnable here on the 30th day of July, 1884.

"Done before me this 18th day of June, 1884.

<div style="text-align:right">"J. Ami Martin, Clerk."</div>

"State of West Virginia. In the clerk's office of the County Court of Preston county (in vacation)—ss :

"In the matter of the probate of the will of John M. Smith, deceased, the interested parties herein having been duly summoned, and the probate of said will being objected to by W. F. Smith, Susan C. Lang, and Indiana A. Baker, by their attorney, the matter of probate is therefore referred to the County Court of this county.

"Done before me, as clerk of said court, this 30th day of July, 1884.

"J. Ami Martin, Clerk."

Deed.

"This deed, made this 24th day of March, 1884, between John M. Smith and Harriet E. Smith, his wife, grantors, of the first part, and Susan Smith, wife of Charles P. Smith, and her children, grantees, all of Preston county, West Virginia, of the second part, witnesseth : That the aforesaid John M. Smith and Harriet E. Smith, his wife, for the mutual love and affection which they have unto the said Susan Smith, wife of C. P. Smith, and their children, by these presents doth give, grant, alien, convey, and confirm unto the said Susan Smith and her children, their heirs and assigns, forever, the hereafter described real estate in Lyon district, Preston county, West Virginia, ten acres of land off the west end of my farm bought of Samuel Chorpenning, as per deed bearing date October 1st, 1869, and east of the sixteen acre tract conveyed to Susan Smith and children by deed bearing date January 23, 1880, and running parallel with the said east line, to make the aforesaid ten acres. To have and to hold, with all its appurtenances and privileges thereto belonging, with covenants of general warranty.

"Witness the following signatures and seals, the day and year above written.

"J. M. Smith,            [Seal.]

"Harriet E. X Smith,  [Seal.]
                 her
                 mark

"Attest:  J. M. Turnley."

"State of West Virginia, county of Preston, ss.:

"I, James McGee, a justice of the peace of said county, do certify that John M. Smith, whose name is signed to the writing hereto annexed, bearing date of the 24th day of

March, 1884, has this day acknowledged the same before me, in said county; and I do further certify that Harriet E. Smith, the wife of said John M. Smith, whose names are signed to the said writing dated as aforesaid, this day personally appeared before me, in said county, and being examined by me privily and apart from her said husband, and having said writing fully explained to her, she, the said Harriet E. Smith, acknowledged the said writing to be her act, and declared that she had willingly executed the same and does not wish to retract it.

"Given under my hand this 24th day of March, 1884.

"JAMES McGEE, Justice."

"WEST VIRGINIA, ss. :

"On the 14th day of July, 1884, the foregoing writing, with certificate thereto, was produced to me in my office, and therein admitted to record.

"Teste :   J. AMI MARTIN, Clerk."

"A copy from the record.

"Teste:   J. AMI MARTIN, Clerk."

The main question involved is :

Was the deed of 24th March, 1884, from John M. Smith to Worth Smith and B. B. Smith delivered to the grantees? A good deal of testimony is excepted to as incompetent, and much of the parol testimony is contradictory and conflicting ; but the following facts clearly appear without the aid of any evidence claimed to be incompetent. The decedent, John M. Smith, while not confined to his bed, but during his last illness, sent for witness D. J. Gibson to come to his house, and do some writing for him. Mr. Gibson went, found decedent sitting in a chair, who told him he had prepared a will which was not satisfactory to him, and then requested his wife to go and get the will, which she did. The envelope was torn open, but preserved ; decedent handed the will to his wife, who threw it in the grate ; destroyed it. Witness then prepared the two deeds above set out, and read the one to Worth and B. B. Smith in the presence of Mr. and Mrs. John M. Smith. After he had done this, he wrote the will. During the preparation of the will, Mr. Howell came in, and they requested him to remain and witness the will, and sent for Mr. Turnley as

the other witness. The decedent was perfectly rational. Mr. Gibson wrote the deeds and will as he was directed by the decedent, and no objection was made to either by Smith or his wife. Smith and his wife were then living with their daughter, Mrs. Rose E. Silcott and her husband, Hamilton T. Silcott. This writing was done there. B. B. Smith was not present; Worth Smith was back and forth about the house. The justice James McGee was sent for; he got there after Mr. Gibson had gone. The decedent told Justice McGee "he had a deed to make to the boys." Decedent then signed the deed to Worth and B. B. Smith in his presence, and acknowledged it. Decedent then stepped out of the room. The wife, Harriet E. Smith, said that she knew what she was about to do, viz. to deed the land to the boys. The justice therefore did not read it to her, but she then signed the deed, acknowledged it, and said she did not wish to retract it. Mr. James Turnley was in the room at the time. Mr. and Mrs. Silcott were living there, but witness could not say whether they were in the room or not. The decedent was feeble and complaining, and died with dropsy between two or three months thereafter. After the deeds and will were thus written, signed, acknowledged and witnessed, the daughter, Mrs. Rose E. Silcott, put them in the decedent's drawer, where he kept his papers, where they remained under lock and key until after John M. Smith's death. There is some evidence tending to show that John M. Smith, about two or three years before his sickness, said that he intended to deed his land to his sons "Buck and Worth," and to the same witness, after 24th March, 1884, "that he had his papers fixed, and was now satisfied."

It appears, however, by the testimony of at least two witnesses, whose competency is not called in question—not members of the family, and one of them in no way related—that shortly after the making of these papers he expressed his dissatisfaction, and said that he had directed his wife to destroy them; and that when he died he wanted what property he left to be divided equally among his children. This was said to these witnesses six or eight days before his death, and on one occasion when the witnesses were

both present; and there is evidence tending to show that a few hours before his death, but when he still appeared to be in his right mind, he said, "Get me my papers."

A deed takes effect only from delivery; but no formal delivery is essential if there be acts evidencing an intention to deliver. It is not even essential that the grantee should be present at the time. The acknowledgment of the deed before justices of the peace and their certificate thereof are not conclusive evidence that the execution of the deed is complete. Where (as in this case) an acknowledged deed is retained by the grantor, it depends on his intention at the time, whether the acknowledgment is a complete execution of the deed. Such intention may be ascertained by evidence of his previously declared purpose, though such intention is not indicated at the time of the acknowledgment. *Hutchinson* v. *Rust*, 2 Gratt. 394.

"Delivery is indeed absolutely necessary to a deed. It is the final act, the formal declaration of the grantor's determination to complete the conveyance or enter into the contract. See *Sharington* v. *Strotton*, Plowd. 298, 303. 'First, there is a determination of the mind when a man designs to pass a thing by deed, and upon that the party causes it to be written, which is one part of deliberation; sealing is another, and delivery is the consummation of his resolution.'" TUCKER, Judge, in *Skipwith* v. *Cunningham*, 8 Leigh, 271, 281. See 2 Min. Inst. 732; 2 Lomax, Dig. 26, 27; Shep. Touch. 57; 4 Kent, Comm. 454; 2 Thom. Co. Litt. 234, 235; *Church* v. *Gilman*, 15 Wend. 656; *Jones* v. *Jones*, 6 Conn. 111 (16 Am. Dec. 39, and note); *Doe* v. *Knight*, 5 Barn. & C. 671.

"Where a grantor executes a deed, and delivers it to a third person, to hold until the death of the grantor, the latter parting with all dominion over it, and reserving no right to recall the deed or alter its provisions, it seems to be settled by the weight of authority that the delivery is effectual, and the grantee succeeds to the title." 1 Devl. Deeds, § 280. See *Foster* v. *Mansfield*, 3 Metc. (Mass.) 412-415, opinion by SHAW, C. J., and other cases cited; *Stone* v. *Duvall*, 77 Ill. 475. See full discussion of the subject in notes to *Jones* v. *Jones*, 16 Am. Dec. 39. See *Albright* v.

*Albright,* 70 Wis. 528–533 (36 N. W. Rep. 254); *Hinson* v.
*Bailey,* 73 Iowa, 544 (35 N. W. Rep. 626); *Standiford* v.
*Standiford,* 97 Mo. 231 (10 S. W. Rep. 836); *Crain* v.
*Wright,* 114 N. Y. 307 (21 N. E. Rep. 401).

The case of *Doe* v. *Knight,* 5 Barn. & C. 671, above cited,
goes as far as any case I have examined. See opinion of
BAYLEY. J., who gives the facts. The grantor signed the
deed of mortgage (already sealed) in the presence of his
niece, the grantee, Mr. Gunnis not being present, and said:
"I deliver this as my act and deed." The niece by his de-
sire attested the execution, and then Mr. Wynne took it
away. He in the same month gave it to his sister, saying,
"Here, Bess, keep this; it belongs to Mr. Gunnis." He
came again in a few days, and she gave it to him; in the
same month he returned it, saying, "Here, put this by."
Mr. Wynne died August 10, 1820, and after his death the
parcel was opened, and the mortgage found. Mr. Gunnis
knew nothing about the mortgage until after it was so
found. The question whether this constituted a delivery
arose in an action of ejectment, and the trial-court ex-
plained to the jury that if such delivery was a departing
with the possession, and of the power and control over the
deed for the benefit of Mr. Gunnis, in order that it might
be delivered to him, either in Mr. Wynne's lifetime or after
his death, the delivery would be good; but if it was deliv-
ered to the sister for safe custody only, for Mr. Wynne, and
to be subject to his future control and disposition, it was
not a good delivery, and they ought to find for the defend-
ant. The jury found for the plaintiff. The court held
upon the authorities cited and discussed that the delivery
of this deed by Wynne, and putting it into the possession
of his sister, made it a good and valid deed, at least, from
the time it was put into the sister's possession.

The cases show that there must at least be an inchoate
delivery in the grantor's lifetime, which will become abso-
lute on his death; there can be no delivery by a dead hand.
"So long as the deed is within the control and subject to
the authority of the grantor, there is no delivery. And
whether in the hands of third persons, or in the desk of
the grantor, is immaterial, since in either case he can de-

stroy it at his pleasure." EASTMAN, J. in *Cook* v. *Brown*, 34 N. H. 460-475.

In this case the deed in question was executed, ready for delivery, but the power of dominion over the deed was not parted with by anything said or done. It was laid away in decedent's drawer where he kept his papers, together with his will made at the same time, and, like the will, it was but ambulatory, not legally fixed or settled, past destruction or alteration. It is nothing more than a will defectively executed, and void under the statute. The grantor died without parting with his possession of the deed, or of his right of control over it. It was not delivered during his life, and after his death no one had the power, express or implied to deliver it. On the contrary, by what he said a few days before his death, he regarded it as under his control as well as in his possession, and, so far from delivering it or directing it to be delivered after his death, he ordered it to be destroyed; and although "the delivery of the deed, like any other fact, may as well be inferred from circumstances as proved by positive testimony," (2 Min. Inst. 733) yet no circumstances are shown by competent testimony in this case from which any such inference can be fairly drawn.

It is true, such an inference might be drawn from what decedent told his son Charles P. Smith before and after the making of the deeds—the one to his brothers and the one to his wife and children—"Charley you had better take those papers, and have them put on record; your mother has them there in the drawer;" but this testimony was excepted to as incompetent; and, as I think, the exception was well taken, for the witness was a party to the suit and directly interested in the event thereof, and his testimony was as to a communication between himself and the deceased and against his devisee and his heirs at law.

But even if it were competent, there are two disinterested witnesses who testify that he directed this deed to be destroyed, having never for a moment parted with the possession and control of it. The evidence of the wife of the grantor and mother of the grantees is explicit and positive that her husband did not deliver the deed in his lifetime,

or intend it to be delivered after his death, but, on the contrary, directed her to destroy it. But this evidence is excepted to, and I also regard it as incompetent, she being a party, and interested as sole devisee. Neither do I deem it material to comment on the method and way in which the deed was the second time obtained from the widow by the grantees, further than to say that it did not operate as a new and original conveyance by her of the land in controversy after she seems to have become the owner as sole devisee. So far, and as to the validity of the deed in question I think there is no error in the decree complained of.

But the Circuit Court goes further and adjudges, orders and decrees that the plaintiff, Harriet E. Smith, is owner in fee simple of the tract of land in the bill and proceedings mentioned and particularly described in said pretended deed from John M. Smith to defendants B. B. Smith and Worth Smith, and entitled to the possession thereof, and awarded her a writ of possession for the land. I do not think this latter part of the decree justified by the pleadings; and we can not say what the proof might show, if there had been any issue on that point. The suit is brought by the widow of John M. Smith and three of the heirs at law against the four remaining heirs at law, to set aside the deed in controversy, assign the widow her dower, and make partition among the plaintiffs and defendants, except defendant Charles P. Smith, who, it is alleged, had by way of advancements already received his full share.

The bill alleges, as we have seen, "that decedent left no will as to his real estate, but willed all his personal estate, after payment of debts and personal expenses, to the said Harriet E. Smith, whom he appointed executor of said will; that there are no debts now existing against decedent; that at the time of his death he was seised in fee simple of about one hundred and seventy two acres of land, which descended to his heirs subject to the widow's dower." These allegations as to the will are by defendants Worth Smith and B. B. Smith admitted in their answer to be true, and as to the other defendants who do not answer are taken as true on bill taken for confessed as to them. There was therefore nothing in the pleadings, and for that reason could

not be anything in the proofs, to justify that part of the decree which now decrees that plaintiff Harriet E. Smith takes the land as owner in fee simple. Such may be the fact, but it does not appear in this suit in such a way as to authorize that part of the decree complained of.

Therefore the decree of September 13, 1882, so far as it adjudges the paper writing dated March 24, 1884, purporting to be the deed of John M. Smith and his wife Harriet E. Smith, to B. B. Smith and Worth Smith, conveying to them the tract of land therein described, to be wholly invalid, null, and void, and decrees the same to be cancelled and annulled, is hereby affirmed, and, so far as said decree adjudges plaintiff Harriet E. Smith to be the owner in fee simple of the said tract of land in the bill and proceedings mentioned and in said pretended deed particularly described, the same is reversed, but without prejudice, and the cause is remanded for further proceedings.

AFFIRMED IN PART.     REVERSED IN PART.     REMANDED.