LAWRENCE, Administrator, Appellant, vs. CHILDREN'S HOME & AID SOCIETY and another, Respondents.

*March 6—April 11, 1939.*

*Franklin E. Fogo* of Richland Center, for the appellant.

For the respondents there was a brief by *Brindley & Brewer* of Richland Center, attorneys, and *Lecher, Michael, Whyte & Spohn* and *Thomas S. Stone,* all of Milwaukee, of counsel, and oral argument by *Mr. Stone.*

NELSON, J.   So many of the stipulated facts as are necessary to an understanding of the nature of this controversy may be summarized as follows : On or about June 24, 1925, at the city of Richland Center, Sarah Davis, hereinafter called the "deceased," who was then of sound mind, freely, voluntarily, and as her own act, made and executed a warranty deed in which certain premises which constituted her homestead were described and in which the defendant society was named as grantee.   At that time the deceased caused a copy of said deed to be made.   The original deed was deposited in a safety-deposit box then rented by her from the Richland County Bank.   On June 27, 1925, David A. Richardson, the superintendent of the society for the Madison district was in the city of Richland Center.   While there he was notified by a Mr. Craig, the president of the Richland County Bank, that the deceased was arranging to make a gift of her home to the society.   Mr. Richardson thereafter called on the de-

ceased and discussed her plans regarding her homestead with her. She told him that she wished to donate her homestead to the society; that she was making out a deed of it to the society; that the deed was to be put in her safety-deposit box; that the deed was to become effective at her death, and that it was to be taken out at her death. During the interview she handed the copy of the original deed to Mr. Richardson, who forwarded it to Mr. Hill, the superintendent of the society. The original deed, deposited by the deceased in her safety-deposit box remained there until after her death. In January, 1938, the deceased, who was then living alone in her home, sustained a fall. She was, at that time, eighty-eight years of age. From the time of her fall until her death, which occurred on February 8, 1938, she was confined to her bed. On or about January 20, 1938, believing that her last sickness was at hand and that death was imminent, she called to her bedside the defendant, her brother, and gave him the key to the safety-deposit box. At the time of delivering the key to Barry she told him that she had made a deed of her home to the society; that the deed was in her safety-deposit box in the Richland County Bank, and that upon her death he was to open the box, take the deed therefrom, have it recorded, and then deliver it to the society. The key so delivered to Mr. Barry remained in his sole and exclusive possession until after her death. Sarah Davis, after delivering the key to Mr. Barry and giving him the instructions just hereinbefore recited, continued to grow more feeble until the day of her death. At the time of her death, the deceased was a widow having no child and no one immediately dependent upon her for support. Promptly after her death the defendant Barry went to the bank, opened the lockbox, procured the deed in question, and delivered it to the register of deeds for record. The deed was recorded on February 12, 1938. Upon it being recorded, Barry intended to deliver the deed to the defendant society pursuant to the

instructions given him, but was prevented from so doing by a restraining order issued out of the county court. Said order was thereafter vacated upon an agreement entered into between Barry and the administrator that the former would not deliver the deed until the rights of the parties had been determined in the action which the administrator then contemplated bringing. At the time the deceased delivered the key to the defendant Barry, and gave him the instructions respecting the deed, she was under no restraint or duress, and her acts were free and voluntary. The premises described in the deed were free from any lien or incumbrance, and her personal property and estate are sufficient to pay all claims, funeral expenses, and expenses of administration.

The court concluded that the society was entitled to have the deed delivered to it by the defendant Barry, and that upon the delivery of the deed, the society would have a fee-simple title to the premises described therein. The judgment entered so provided.

While conceding that the deceased clearly intended that the deed in question should promptly be delivered to the society after her death, it is contended by the administrator that since the deed contained the following clause:

"This deed shall become operative and in effect at the death of the grantor,"—

the transaction amounted merely to an attempted testamentary disposition of her real estate which was wholly invalid because she did not comply with the requirements of sec. 238.06, Stats., relating to the making of wills. It is further contended that since the intention of the deceased was clearly expressed in her deed parol evidence is inadmissible to change that clear and unambiguous intention so expressed. The administrator further contends that since no delivery of the deed was made in her lifetime, and since she did not intend the deed to have any present effect in her life-

time, Barry's agency authority to deliver the deed terminated upon her death.

If the deceased, after executing the deed in 1925, and placing it in her safety-deposit box, had permitted it to remain there without turning the key over to Barry and instructing him upon her death to open the box, to take out the deed and after having it recorded, to deliver it to the society, the contention that the transaction amounted to nothing but an attempt to make a testamentary disposition would have merit. However, it clearly appears from the stipulation of facts that she did turn over the key to her safety-deposit box to her brother, the defendant Barry, and at that time told him "that upon her death he was to open the said lockbox, take the deed therefrom, have it recorded, and then deliver it to the said Children's Home & Aid Society."

It has been held in numerous cases where a grantor had executed a deed and placed it in the custody of a third person with instructions to deliver it to the grantee therein named, upon the grantor's death, and delivery was so made, the delivery was valid and the conveyance good. While there is some variation in stating the applicable rule, such deeds have almost always been upheld.

In *Albright v. Albright,* 70 Wis. 528, 533, 36 N. W. 254, it was said:

"The authorities certainly go to the extent of sustaining the proposition that where a deed is duly executed and delivered by the grantor to a depositary in the presence of the grantee, and without any reservation of control, with the intention and understanding that such depositary is to retain the custody thereof until the grantor's death, and then deliver the same to the grantee, it is such grantor's deed *in præsenti* from the time of such deposit, and such depositary thereby becomes the trustee of the grantee." (Citing cases from other jurisdictions which had been approved by this court in *Prutsman v. Baker,* 30 Wis. 644, and *Campbell v. Thomas,* 42 Wis. 437.)

In *Kittoe v. Willey,* 121 Wis. 548, 552, 99 N. W. 337, after referring to a number of prior cases, and stating that the rules of law generally governing the delivery of a deed to one other than the grantee, are quite well settled by our own decisions, it was said:

"These cases establish that the manual deposit of a deed with a third person, to receive and hold for the grantee, with intent thereby to give such paper effect as a deed and to place the same beyond the custody and control of the grantor, will give such deed validity and efficacy as against the grantor, although some condition is imposed, precedent to final delivery to the grantee, which may serve to prevent vesting of actual title in him meanwhile, certainly if such precedent event is one sure to happen. There must be physical tradition of the deed out of the grantor's possession, and there must be the intent to place it out of his control for the benefit of the grantee. Obviously the latter element is the one over which difficulty most frequently arises, and not much can be said *a priori* to guide the judgment of trial courts thereon. Hardly more has been accomplished in that direction than to prescribe the rule that any express reservation of a right to withdraw the deed from the depositary refutes the intent essential to its efficacy."

In *Whiting v. Hoglund,* 127 Wis. 135, 138, 106 N. W. 391, it was said:

"Delivery of a conveyance by the maker to a third person for the grantee at the latter's request, or as his authorized agent, is a sufficient delivery to give full effect to the paper. *Sargeant v. Solberg,* 22 Wis. 132; *Harrington v. Brittan,* 23 Wis. 541.

"An examination of the authorities cited will show they support this as the law. The question as to whether any particular circumstance constitutes an efficient delivery of a deed or not turns on the intention of the parties. There need be only a parting with the paper by the grantor and the intent thereby to pass title and assent thereto by the grantee, though the instrument never comes to the latter's manual possession. His assent may be presumed by the mere beneficiary charac-

ter of the transaction, subject to be rebutted by proof to the contrary."

In *Wells v. Wells*, 132 Wis. 73, 75, 111 N. W. 1111, where a father executed a deed of certain lands to his son, attached to it a written memorandum as follows:

"I hereby direct that the deed hereto annexed shall five days after my death be delivered by my executor or administrator to my son Thomas Wells, or his heirs, and that he have possession of the property contained therein,"—

placed it with other deeds in an envelope upon which was written at his direction:

"In escrow to Henry Ludlow, with directions to deliver as within stated,"—

and delivered it and other deeds to the said Henry Ludlow with instructions to take it and the other deeds, hold them, and after his death deliver it and them to the several grantees named therein, it was held that the deposit of such deed became the present deed of the grantor, and that upon the delivery the title to the land vested in the son absolutely. See also *Bates v. Winters*, 138 Wis. 673, 120 N. W. 498.

In *Klabunde v. Casper*, 139 Wis. 491, 121 N. W. 137, it was held that the delivery of a deed to a third person, with instructions to give it to the grantee named in the deed after the grantor's death is a valid delivery, if it was the grantor's intention to presently pass the title.

In *Kolber v. Steinhafel*, 190 Wis. 468, 472, 209 N. W. 595, it was said:

"The delivery of a deed duly executed by the grantor to a depositary without any reservation of control, with the intention and understanding that the depositary is to retain custody of the deed until the death of the grantor and then deliver it, make it the grantor's deed *in præsenti* from the time of the deposit, and the depositary thereby becomes the trustee of the grantee, and the subsequent destruction by the grantor of the deed will not divest the title of the grantee. *Albright v. Albright*, 70 Wis. 528, 36 N. W. 254."

The administrator strongly relies upon the case of *Darling v. Williams,* 189 Wis. 487, 489, 488, 490, 207 N. W. 255. In that case the grantor made and executed a deed of certain lands to her daughter and immediately thereafter attempted to deliver it to the grantee. The daughter, however, refused to accept delivery of the deed because she felt that if her mother wanted to go and live somewhere else she should have the property. The deed, at the time the daughter refused to accept it, was in the possession of a Mr. Kramer, who was the cashier of a bank and then present. He thereupon indorsed upon the deed the following:

"To be delivered and recorded only after death of Eliza Chase" (the grantor),—

and gave to the grantor the following receipt:

"Received from Eliza Chase the deed of two acres of land in Mattoon which we will deliver to Myrtle Lorrig only after your death, as per your instructions. Mattoon State Bank, W. B. Kramer, cashier."

The court held, under the circumstances, that there was no valid delivery of the deed, saying:

"It is well settled that to constitute a valid delivery of a deed the grantor must not only intend a delivery but must part with dominion and control of the deed and the grantee must accept the delivery made."

Under the facts the court held that the grantor did not part with the control of the deed and the grantee refused to accept delivery. Whether the grantor there had delivered the deed into the custody of the bank with instructions to deliver to the grantee upon her death was not discussed and no reference to the numerous cases hereinbefore cited was made by this court. The holding in that case, considered in connection with the undisputed testimony and the documentary evidence, is difficult to harmonize with the many prior decisions of this court.

Had the deceased actually delivered the deed here in question to the defendant Barry with instructions to deliver the same to the society immediately after her death, no controversy probably would have arisen.

While the deceased did not actually deliver the deed in question into the hands of Barry, she did, in our opinion, make a good symbolical delivery of the deed. In the recent case of *Estate of Schreihart*, 223 Wis. 218, 270 N. W. 71, it was held that the delivery of a key to a safety-deposit box constituted a sufficient symbolical delivery of the contents of the box to sustain a gift *causa mortis*. Citing *Harrison v. Foley* (8th Cir.), 206 Fed. 57; *Hagemann v. Hagemann,* 204 Ill. 378, 68 N. E. 381; *Rosenau v. Merchants' National Bank,* 56 N. D. 123, 216 N. W. 335, 60 A. L. R. 1040; *Foley v. Harrison,* 233 Mo. 460, 136 S. W. 354. See also *Heavner v. Kading,* 209 Iowa, 1271, 228 N. W. 311, and *Heavner v. Kading,* 209 Iowa, 1275, 228 N. W. 313, companion cases, which involved facts very similar to the facts here. It was there held that the delivery to a third person of a key to a safety-deposit box in which the executed deeds were kept by the grantor, with instructions to deliver the deeds to the grantees named therein, upon his death, was a good symbolical or constructive delivery of the deeds in question. We perceive no reason why the delivery of the key to the safety-deposit box to Mr. Barry, with instructions to take the deed from the box upon her death and deliver it to the society, did not constitute a good symbolical delivery of the deed in question, and why it should not be given the same force and effect as though it had actually been delivered into the custody of the defendant Barry.

While the county court did not exactly pursue the same line of reasoning in reaching its conclusion, the result reached by it was the same as that reached by us.

*By the Court.*—Judgment affirmed.